**PICARD V. HSBC BANK, et.al.**                **ORAL ARGUMENT 11/21/12**

1

```
           UNITED STATES COURT OF APPEALS
              FOR THE SECOND CIRCUIT


-------------------------------------------x
IN RE: BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,
                     Debtor.
-------------------------------------------x
ORAL ARGUMENT RELATING TO DOCKET NOS:
                     Docket No. 11-5207
                     Docket No. 11-5044
                     Docket No. 11-5051
                     Docket No. 11-5175
-------------------------------------------x
IRVING H. PICARD, TRUSTEE FOR THE
LIQUIDATION OF BERNARD L. MADOFF
INVESTMENT SECURITIES LLC,

                     Plaintiff-Appellant,

SECURITIES INVESTOR PROTECTION CORPORATION,

                     Intervenor-Appellant,
          vs.
HSBC BANK PLC, et al.,
                     Defendants-Appellees.
-------------------------------------------x


IRVING H. PICARD, TRUSTEE FOR THE
LIQUIDATION OF BERNARD L. MADOFF
INVESTMENT SECURITIES LLC,

                     Plaintiff-Appellant,

SECURITIES INVESTOR PROTECTION CORPORATION,

                     Intervenor-Appellant,
          vs.
JPMORGAN CHASE & CO., et al.,
                     Defendants-Appellees.
-------------------------------------------x
              November 21, 2012
```

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

2

1   ------------------------------------------x
    IRVING H. PICARD, TRUSTEE FOR THE
2   LIQUIDATION OF BERNARD L. MADOFF
    INVESTMENT SECURITIES LLC,
3
                        Plaintiff-Appellant,
4
    SECURITIES INVESTOR PROTECTION CORPORATION,
5
                        Intervenor-Appellant,
6            vs.
7   UBS AG, et al.,
                        Defendants-Appellees.
8   ------------------------------------------x
    IRVING H. PICARD, TRUSTEE FOR THE
9   LIQUIDATION OF BERNARD L. MADOFF
    INVESTMENT SECURITIES LLC,
10
                        Plaintiff-Appellant,
11
    SECURITIES INVESTOR PROTECTION CORPORATION,
12
                        Intervenor-Appellant,
13           vs.
14  HSBC BANK PLC, et al.,
15                      Defendants-Appellees.
    ------------------------------------------x
16
                        November 21, 2012
17                      10 a.m.
18                      Daniel Patrick Moynihan
                        U.S. Courthouse
19                      Ceremonial Courtroom
                        500 Pearl Street
20                      New York, New York 10007
    B E F O R E :
21
      HON. DENNIS JACOBS, Chief Judge
22    HON. SUSAN CARNEY
23                      REPORTED BY:
                        NANCY MAHONEY, CCR/RPR
24
              BENDISH REPORTING, INC.
25         Litigation Support Services

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

3

```
 1    A P P E A R A N C E S:
 2
      SECURITIES INVESTOR PROTECTION CORPORATION
 3    Suite 800
      805 15th Street, NW
 4    Washington, DC 20005
      BY:  CHRISTOPHER H. LaROSA, ESQ.
 5    Intervenor
 6
      BAKER & HOSTETLER, LLP
 7    45 Rockefeller Plaza
      New York, New York 10111
 8    BY:  OREN J. WARSHAVSKY, ESQ.
      For Appellee, Trustee Irving Picard
 9
10    CLEARY, GOTTLIEB, STEEN & HAMILTON
      One Liberty Plaza
11    New York, New York 10006
      BY:  THOMAS J. MOLONEY, ESQ.
12    For HSBC Defendants
13
      WACHTELL, LIPTON, ROSEN & KATZ
14    51 West 52nd Street
      New York, New York 10019-6150
15    BY:  JOHN F. SAVARESE, ESQ.
      For JPMorgan Chase & Co., et al.
16
17    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
      Four Times Square
18    New York, New York 10036
      BY:  MARCO E. SCHNABL, ESQ.
19    For UniCredit S.p.A and Pioneer
      Alternative Investment Management Ltd.
20
21    GIBSON, DUNN & CRUTCHER LLP
      200 Park Avenue
22    New York, New York 10166-0193
      BY:  MARSHALL R. KING, ESQ.
23    For UBS Defendants, Rene Egger, Alain
      Hondequin, Hermann Kranz and Ralf Schroeter
24
25
```

**BENDISH REPORTING, INC.**
**877.404.2193**

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

4

1    A P P E A R A N C E S: (Cont'd)

2

3        SULLIVAN & WORCESTER
         1633 Broadway
         New York, New York 10019
4        BY:  FRANKLIN B. VELIE, ESQ.
         For UniCredit Bank Austria AG

5

6        KATTEN MUCHIN ROSENMAN LLP
         575 Madison Avenue
7        New York, New York 10022-2585
         BY:  ANTHONY L. PACCIONE, ESQ.
8        For Access International Advisors
         Defendants, Patrick Littaye, Claudine
9        Magon de la Villehuchet, Pierre
         Delandmeter, and Groupement Financier Ltd.

10

11       PORZIO BROMBERG & NEWMAN P.C.
         100 Southgate Parkway
12       Morristown, New Jersey 07962-1997
         BY:  BRETT S. MOORE, ESQ.
13       For Luxalpha SICAV, Maitre Alain Rukavina
         and Paul Laplume in their capacities as
14       liquidators and representatives of
         Luxalpha SICAV

15

16

17

18

19

20

21

22

23

24

25

Case: 11-5044   Document: 151-4   Page: 5   05/07/2013   929603   125

PICARD V. HSBC BANK, et.al.                ORAL ARGUMENT 11/21/12

5

1        JUDGE JACOBS:  Judge Winter is on
2   this panel but he is unable to sit with us this
3   morning.  He will have the benefit of oral
4   argument and he will participate in the
5   disposition of these appeals.
6            In doing so, I'll try to lay out a
7   sensible way of hearing the various parties in
8   the Madoff cases.
9            In Re Bernard L. Madoff Investment
10  Securities, unless the parties have a sensible
11  alternative that is intuitive, we will hear
12  Picard for 20 minutes and SIPC for 15.  That
13  will be followed by ten minutes each from the
14  following parties in this order:  JPMorgan,
15  Egger, Bank Austria, Pioneer, and HSBC, and then
16  we'll hear Picard for ten minutes and SIPC for
17  five minutes.
18            I'll read that again because it's
19  very complicated.  Picard for 20 minutes, SIPC
20  for 15, followed by ten minutes each and the
21  following five parties:  JPMorgan, Egger,
22  UniCredit Bank Austria, Pioneer, HSBC.  They
23  will be followed by Picard for ten minutes in
24  rebuttal and SIPC for five minutes in rebuttal.
25            Does that create a serious problem?

Case: 11-5044   Document: 151-4   Page: 6   05/07/2013   929603   125

PICARD V. HSBC BANK, et.al.          ORAL ARGUMENT 11/21/12

6

1    We might as well work this out before we sail

2    into this.

3               MR. SAVARESE:  Yes, Your Honor.

4    John Savarese for JPMorgan.  We did confer among

5    ourselves beforehand --

6               JUDGE JACOBS:  And you divided the

7    time?

8               MR. SAVARESE:  We have, and we've

9    divided it by substantive topics.  That is, the

10   order that Your Honor is approaching, with some

11   minor adjustment, will make sense.

12               JUDGE JACOBS:  Tell me how it will

13   make sense.  If you'd like me to repeat it, I

14   will.

15               MR. SAVARESE:  Yes.  I intend to go

16   first on behalf of JPMorgan, precisely as Your

17   Honor said, and my focus will be -- and we

18   discussed this with counsel for the Trustee --

19   is on the trustee standing case law, the Wagoner

20   and Caplin line of cases and the question of

21   trustee standing.

22               JUDGE JACOBS:  You'll be speaking

23   for how many minutes?

24               MR. SAVARESE:  Ten minutes.

25               Second, Tom Moloney, representing

Case: 11-5044   Document: 151-4   Page: 7   05/07/2013   929603   125

PICARD V. HSBC BANK, et.al.          ORAL ARGUMENT 11/21/12

7

1    HSBC, we would propose to have go second and

2    speak for ten minutes.  And Mr. Moloney's focus

3    will be on the SIPA statutory scheme itself.

4              Third, Mr. Schnabl, representing

5    UniCredit, we would propose to have Mr. Schnabl

6    go third for ten minutes.  So we're slightly

7    proposing a change, Your Honor, of the order in

8    which you would call us up to the podium.

9    Mr. Schnabl is prepared to focus on the

10   Redington case and the issues of standing under

11   common law.

12             Fourth, following Mr. Schnabl,

13   Mr. King, Marshall King, who represents UBS,

14   would come to the podium to talk about any

15   questions Your Honors may have with respect to

16   the contribution theory.

17             And then, finally, Mr. Velie,

18   representing Bank Austria -- so Mr. Velie is in

19   a different order from what Your Honor has

20   suggested -- would address any other standing

21   arguments.

22             I think that's a sensible way to

23   sort of order this.  We hoped that that would

24   ease the Court's task.  We know there are a lot

25   of issues and a lot of parties before you.

**PICARD V. HSBC BANK, et.al.**            **ORAL ARGUMENT 11/21/12**

8

1              JUDGE JACOBS:  I was hoping that

2      there would be a sensible proposal.  I just

3      wanted to put something out that there would be

4      a framework.

5              MR. SAVARESE:  No, we're glad to

6      have done it.

7              JUDGE JACOBS:  We will do it this

8      way.

9              MR. SAVARESE:  Perfect.

10              (Recess taken.)

11              JUDGE JACOBS:  At this time we'll

12      hear Picard versus JPMorgan Chase, Egger and

13      UniCredit, Pioneer and HSBC.

14              MR. WARSHAVSKY:  Good morning, Your

15      Honors.

16              JUDGE JACOBS:  Good morning.

17              MR. WARSHAVSKY:  May it please the

18      court, Oren Warshavsky of Baker & Hostetler for

19      the Appellant, Irving Picard.  Good morning,

20      Your Honors.  We're here this morning -- let me

21      start that again.

22              For the past 30 years the Trustee,

23      before the district courts below, the Trustee, a

24      SIPA Trustee could bring the exact type of

25      claims that the Trustee brought here.  That was

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

9

1    what all courts that had examined these issues

2    had understood the law to be.

3              What I would submit to Your Honors

4    is that that position is supported not just by

5    the SIPA statute but actually all of the

6    citation that we have in these various cases,

7    whether we look at Wagoner and its progeny,

8    including the Kirschner decision or the In Re

9    Mediators, the Redington decision, of course, as

10   well as some of the decisions in this case,

11   including the Net Equity decision as well as the

12   Rosenman decision.

13             And what I'd like to do is actually

14   start with the SIPA statute itself.  The SIPA

15   statute itself is a customer protection statute

16   and it's different than a traditional bankruptcy

17   statute.  The Bankruptcy Code is all about

18   protection of the debtor, protection about

19   creditors of the debtor.

20             Starting in the '30s Congress

21   realized that the bankruptcy -- then it was the

22   Bankruptcy Act -- did not provide protection

23   that typical customers in the brokerage industry

24   needed.  They enacted Section 60 of the Chandler

25   Act, that didn't work, and then in 1970 Congress

**PICARD V. HSBC BANK, et.al.**            **ORAL ARGUMENT 11/21/12**

10

1    enacted SIPA.  And it enacted SIPA for the sole

2    purposes -- an overlay to the bankruptcy code --

3    for the sole purpose of protecting customers.

4              And the SIPA statute wasn't enacted

5    in a vacuum.  It was enacted in -- to work hand

6    in hand with the securities laws, as well as the

7    enactment at the same time of Rule 15c3-3 of the

8    Exchange Act.

9              Under Rule 15c3-3 of the Exchange

10   Act a broker/dealer is supposed to segregate

11   funds.  A broker/dealer, so that when an

12   investor comes and invests, the broker/dealer --

13   the funds or the securities that are transferred

14   into the broker/dealer's possession remain

15   property of the customer, they remain the

16   property of the debtor.

17             If a customer of a broker/dealer

18   seeks the return of his securities or her cash,

19   that customer is entitled to it, and 15c3-3

20   requires it.  It requires it by operation of

21   law.  That works hand in hand with the

22   definition of customer property --

23             JUDGE JACOBS:  What do you do with

24   the general proposition that a bailee can't be a

25   thief?  If you've stolen it, you're not holding

**PICARD V. HSBC BANK, et.al.**            **ORAL ARGUMENT 11/21/12**

11

1   it for bailment.

2           MR. WARSHAVSKY:  Well, I think

3   that's when the bailment arises under state

4   common law.  Here what we have is federal law

5   that requires --

6           JUDGE JACOBS:  There's no federal

7   law of bailment, so as far as I know.  I hardly

8   remember the state law of bailment.

9           MR. WARSHAVSKY:  Well, luckily I'm

10  not going to recite the state law of bailment.

11  I'll go to the federal law, which in 15c3-3

12  itself it requires a segregation.  It requires

13  the broker to keep property for the customer,

14  and what the broker has is possession of the

15  property, but he holds -- he or she holds it for

16  the benefit of the customer.  That's the

17  definition of a bailment.

18           In point of fact, when you think

19  about a bailment, a bailment really is the

20  lowest level of interest somebody could have in

21  a piece of property, and that's what we have

22  here.  The broker has --

23           JUDGE CARNEY:  Why didn't the

24  statute use the term bailment or describe the

25  Trustee as a bailee then?

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

12

1          MR. WARSHAVSKY:  Well, I hadn't

2     gone to the SIPA statute yet, but I think 15c3-3

3     under the Securities Act -- I don't know why it

4     didn't use the word bailment.  I wish I could

5     come to you and give you the silver bullet

6     answer to that.  I don't have one.  It clearly

7     does not use the term bailment.

8               However, there's no other --

9     there's no other legal relationship by which

10    that -- I'm sorry -- there's no other

11    nomenclature by which we could use to define

12    that relationship.   All the broker has is a

13    possessory interest in that property.

14              JUDGE CARNEY:  I mean, it created a

15    special overlay on to the broker/dealer

16    relationship potentially and a set of rights and

17    duties that were sui generis -- or engrafted

18    maybe on to kind of a bankruptcy setting and a

19    bankruptcy background, and that's why I'm

20    confused about your reliance on the notion of

21    bailment, where that really is not explicit in

22    the statute and doesn't seem to be the premise

23    of the overall SIPA.

24              MR. WARSHAVSKY:  Well, actually, I

25    think it is the premise of SIPA, because what

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

13

1   SIPA does -- if we just looked at the Bankruptcy

2   Code, everything would flow through the debtor.

3   What SIPA does is SIPA defines customer property

4   and customer property -- I was speaking before

5   about the Securities and Exchange Act.

6              What SIPA does is SIPA comes in

7   once a broker/dealer fails, once a broker/dealer

8   is insolvent, and SIPA has a definition of

9   customer property, which means property that by

10  its nature belongs to the customers, not to the

11  debtor, not to the Trustee, frankly.

12             And SIPA actually broadens the

13  definition of customer property.  It's not just

14  what was segregated in the 15c3-3 account or

15  what was supposed to be segregated in a case

16  like this, but also all property which -- in the

17  possession of the debtor which could have been

18  used or which should have been in that fund, as

19  well as all property that the -- that the

20  Trustee can bring back into the estate.

21             So, for instance, if -- as in a

22  typical Ponzi scheme or a case like this where

23  one customer's property is stolen and given to

24  another customer, a traditional bankruptcy

25  trustee has no right to do anything or to bring

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

14

1   a cause of action there because it was never

2   property of the debtor.

3              SIPA creates the legal fiction

4   under 78fff-2(c)(3) and it allows the Trustee to

5   treat that -- for the sole purpose of bringing

6   the avoidance action and bringing property back

7   into the estate, it allows -- it creates a legal

8   fiction which allows the Trustee to treat the

9   property as though it were property of the

10  debtor.  It actually grants standing to bring

11  that money back into the estate, with the idea

12  being but not -- I'm sorry -- I guess the main

13  point being, not that it would go into the

14  general estate, not that it would go to the

15  estate of the debtor, but that it would be

16  brought back into the Fund of Customer Property,

17  and the reason that's important here is the way

18  the statute works.

19              Now, in the Rosenman case it was

20  called -- which is part of this liquidation --

21  was referred to as the customer property estate,

22  other cases call it the Fund of Customer

23  Property, the statute refers to the Fund of

24  Customer Property, but the money comes into the

25  fund.

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

15

1        And the only people -- or the only

2    entities that can get money from the Fund of

3    Customer Property are customers.  The Fund of

4    Customer Property cannot be used to pay off the

5    debtors.  And, in fact, when the statute uses

6    the term "customer" for those who can

7    participate in that fund, it explicitly removes

8    shareholders, capital investors, individuals or

9    entities that loan money, debenture holders, it

10   excludes all of those entities.

11        JUDGE JACOBS:  But isn't the issue

12   how the Trustee can go about filling that fund

13   or replenishing that fund, I mean, if you find,

14   you know, money that's available for

15   replenishing the fund in the hands of the

16   debtor, then that goes into the fund?

17        The question is:  Can you go

18   against third parties asserting rights that

19   would, in the usual course, be rights assertable

20   by the customers in order to get that money, put

21   it in the fund and then distribute it according

22   to the Trustee's own internal rules, which we

23   have affirmed, but, you know, they are -- it

24   seems like a different beast.

25        MR. WARSHAVSKY:  Well, I think --

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

16

1   the way the statute is set up is that the

2   Trustee is the Trustee of this estate, the

3   trustee of the fund, and ultimately if the fund

4   is full -- and in this case we're only talking

5   about principal -- if the fund is full, of

6   course, then the Trustee has no more standing on

7   behalf of the fund.

8          However, in a case which might be

9   six months or eight months or ten months, the

10  Trustee probably could bring back all money in

11  by virtue of avoidance actions, it might be able

12  to.

13         Here, however -- and I'd like to

14  actually -- to respond to your question, Your

15  Honor, I'd also point to the St. Paul case and

16  the Mediators case in this court because I think

17  those are instructive.

18         Number one, the statute does -- as

19  a customer protection the statute does put the

20  SIPA Trustee in the position of bringing claims

21  for common injury to the fund.  St. Paul

22  breathes life into that, suggesting that when

23  claims are not particularized, that the Trustee

24  is the proper party to avoid -- in this case we

25  have 4900 account holders -- to avoid 4900

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

17

1    different lawsuits, but there's another point

2    here too, which is, when you look at St. Paul

3    and you look at Mediators -- and I think this

4    goes back to the first question too about why

5    it's different then the fund -- I'm sorry -- why

6    it's different than a traditional bankruptcy

7    case.

8              When you look at the Mediators

9    case, the Mediators case, decided by Judge

10   Winter, actually stood for a few propositions,

11   but one was -- in the Mediators case there were

12   creditors, creditors of the debtor who came and

13   said by virtue of the injury to the debtor, they

14   were going to assert claims.

15             They were found in pari delicto.

16   Why, because their claims arose through the

17   debtor.  Here -- and through damage to the

18   debtor.

19             Here if we brought -- if customers

20   were to bring their own claim, their claim would

21   be through damage to their property.  Again,

22   when we employ 15c3-3 under the Code, the

23   definition of customer property under SIPA, the

24   damage is to the Fund of Customer Property, not

25   to Bernard L. Madoff.  And, therefore, if these

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

18

1  customers were to bring the act on their own --

2  if each one were to bring a lawsuit on their

3  own, no one would suggest that they were in pari

4  delicto.  In point of fact, they'd be clean.

5            JUDGE JACOBS:  Sure.

6            MR. WARSHAVSKY:  They, and sorry --

7  I'm sorry, did I interrupt, Your Honor?

8            JUDGE JACOBS:  I think what you're

9  leading up to is the idea that the SIPA Trustee

10 has some different powers and title than a

11 trustee in a case under Title 11 and we know

12 that that can't be because the statute says that

13 the SIPA Trustee has the same powers as the

14 Trustee under Title 11.

15            MR. WARSHAVSKY:  He does have the

16 same powers but --

17            JUDGE JACOBS:  The same title and

18 the same powers.

19            MR. WARSHAVSKY:  Well, I guess

20 where I would disagree as to title is that in a

21 typical bankruptcy we don't have the fund of

22 customer property.  They were a bailment in a

23 typical bankruptcy and the Trustee were to

24 accede to that bailment, the Trustee wouldn't be

25 coming in as the Trustee of the debtor and

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

19

1     bringing claims on behalf of the debtor's

2     property.  The Trustee would actually be

3     bringing claims on behalf of the bailed property

4     and that's all we have here.

5                    What we have here is not -- again,

6     I started with the distinction about the

7     Bankruptcy Code being a debtor protection

8     statute.  A typical Chapter 11 bankruptcy

9     trustee only brings claims to -- on behalf of

10    the debtor, only property that was property of

11    the debtor, only injury -- only to address

12    injury that was injury to the debtor.

13                   Here we're not talking -- when we

14    we're talking about the SIPA Trustee and solely

15    for the recovery of the Fund of Customer

16    Property, not the general estate, because SIPA

17    does create two estates -- or what I'll call two

18    estates and what I think at least makes sense

19    for discussion purposes and that I think is why

20    the Rosenman court used those terms.

21                   There's the general estate, which

22    is just like any other bankruptcy estate, which

23    may pay off other loans, may pay off fraud

24    claims, and then there's the customer property

25    estate, which particularly in this case all it

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

20

1   is doing is returning to customers their

2   property.

3                JUDGE CARNEY:  Well, except to the

4   extent it's called on to do that pro rata, after

5   assembling more and going after other funds that

6   could properly be included as customer property.

7   It's not really returning the same thing.  I

8   mean, there are aspects of this are unlike

9   ordinary bailment, I think you have to agree.

10               MR. WARSHAVSKY:  I agree in the

11   facts of this case, but if we were to take a

12   look at another SIPA proceeding, such as Lehman

13   Brothers, where no one went in and raided the

14   Fund of Customer Property, those were turned

15   back over to the customers.

16               In fact, when there are

17   specifically identifiable customer name

18   securities, those are returned to the customer.

19   Here it's a bit more like, you know -- one of

20   the cases that was cited -- I know it's an old

21   case -- but it was cited by SIPC had to do with

22   grain.  We have fungible -- ultimately here all

23   we have is fungible property.  All we have --

24   there were no securities that were ever

25   purchased.  All we have is really -- as you see

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

21

1    the net equity decision, cash in/cash out, and

2    cash being fungible, the only way -- by virtue

3    of the shortfall, the only way to return

4    property is to do it on a pro rata basis.

5                    JUDGE CARNEY:  It's still a little

6    inconsistent with the basic notion of bailment,

7    I would think.

8                    Could you go back to St. Paul for a

9    minute and explain how that supports your

10    argument because I see St. Paul as still looking

11    at customer claims that are premised on the

12    existence of the estate itself having a claim,

13    the debtor estate having a claim, as opposed to

14    being independent of that.

15                    MR. WARSHAVSKY:  Well, I think --

16    I'm not -- trying to answer that precisely.  I'm

17    just trying to get my words.

18                    In a -- what St. Paul stood for was

19    that if there was a claim that could be brought

20    by any debtor for the same -- for a common

21    injury, the claim belonged to the estate, the

22    idea being not that there -- I'm sorry -- did I

23    say any debtor?  I meant any creditor -- I'm

24    sorry -- that if a claim could be brought by any

25    creditor of the estate, then it was property of

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

22

1    the estate.

2                  And the reason for that is actually

3    just like I would say concurrent with the SIPA

4    statute in that we don't want 4900 lawsuits and

5    we don't want a race to the courthouse.

6                  JUDGE CARNEY:  Again, wasn't that

7    in the context of a situation where the estate

8    itself clearly had an alter ego claim, so these

9    were addition to that, as opposed to independent

10   of the company's alter ego claim.

11                 MR. WARSHAVSKY:  Well, and I think

12   that's right, and I think that's because St.

13   Paul arose in a traditional bankruptcy where all

14   there was was a debtor estate.  To the extent

15   creditors would have claims in common, it would

16   be through the injury to the estate itself, or

17   the debtor itself.

18                 Here again the injury to the

19   customers, which is common, which is basically

20   through the deepening of the insolvency here,

21   the injury to all customers is the disappearance

22   of their money and the fact that Madoff

23   declared -- you know, was running a Ponzi

24   scheme.  So all customers were injured through

25   those actions.  And the claim arises through the

Case: 11-5044   Document: 151-4   Page: 23   05/07/2013   929603   125

PICARD V. HSBC BANK, et.al.          ORAL ARGUMENT 11/21/12

23

1    damage to the fund.  It's by virtue of the fund

2    not being there.

3              Did I answer your question?

4              JUDGE CARNEY:  I still see that

5    there was -- that the debtor estate itself had

6    an alter ego claim --

7              MR. WARSHAVSKY:  Right.

8              JUDGE CARNEY:  -- that is not

9    present here and that's why --

10             MR. WARSHAVSKY:  Here in the first

11   four common law causes of action asserted by the

12   Trustee in most of these -- other than

13   contribution causes of action asserted by the

14   Trustee in this case, they cannot -- the

15   customers' claims certainly do not arise through

16   damage to BLMIS.  They strictly arise through

17   damage to the Fund of Customer Property.

18             It's our belief -- but, again, I

19   guess what we would go back to is the Fund of

20   Customer Property is established only for

21   participation by customers and, therefore, what

22   we say is everybody, every customer has a common

23   claim there and it's through that common injury.

24             JUDGE JACOBS:  You're saying the

25   customer has a common claim, but isn't an

**PICARD V. HSBC BANK, et.al.**            **ORAL ARGUMENT 11/21/12**

24

1    element of almost all of your causes of action

2    reliance?

3                    MR. WARSHAVSKY:  No, I don't think

4    -- no, I don't think they are.  I think that an

5    element to our causes of action might be

6    customers' reliance on Bernard Madoff.  What

7    we've alleged in all of our causes of action is

8    really aiding and abetting causes of action.

9                    If you look at the HSBC or

10   UniCredit complaints, what we have is aiding and

11   abetting breach of fiduciary duty, aiding and

12   abetting fraud, and so the reliance by the

13   customers was on Bernard Madoff.  I think

14   everybody would agree that innocent customers

15   with a valid customer claim all relied, to their

16   detriment, on Bernard Madoff.

17                    So I guess reliance -- yes, to

18   answer to your question, reliance is an element,

19   but it's reliance on Bernard Madoff, not

20   reliance on these defendants.

21                    If I may quickly turn to -- did I

22   answer both of your questions on that?

23                    JUDGE JACOBS:  We have your

24   answers.

25                    My colleague Mr. LaRosa will speak

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

25

1    more to the issue of SIPC's right of

2    subrogation, which is also a standing issue, but

3    I would point out that in both of these cases if

4    we look to -- I'm sorry -- both of the decisions

5    below and in all of these cases, if we look to

6    the plain language of the statute, 78fff-3(a),

7    it is very clear that SIPC's rights of

8    subrogation against the estate are not to the

9    exclusion of SIPC's other equitable

10   subordination rights.

11              Finally, I do want to go quickly to

12   the Trustee's contribution claims, because the

13   Trustee's contribution claims there we do have

14   to acknowledge that we are stepping into the

15   shoes of Bernard Madoff.  The only way -- and

16   BLMIS -- and the only way we can accede to those

17   claims is by virtue of being a joint tortfeasor.

18              What the Trustee is doing -- I'd

19   like to give a quick example, if I may, of the

20   type of claim that the Trustee has raised

21   because there are specific claims and there are

22   general claims, but here what we've accused some

23   of these defendants of doing is they were

24   custodians for funds, for overseas funds, and

25   they were supposed to hold on to all assets, to

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

26

1    all securities, all cash, and they got paid for

2    that, and that's what gave customers confidence

3    investing into these feeder funds, many of these

4    customers not even knowing that Bernard -- that

5    the money was ultimately going to Madoff.

6              The money did and the duties, the

7    custodial duties were just transferred to Madoff

8    for free, by the way.  Madoff didn't charge

9    these defendants -- may I finish this example?

10   I see my time is running.

11             JUDGE CARNEY:  Go ahead.

12             MR. WARSHAVSKY:  These defendants

13   continued to collect their fees but had

14   basically delegated Madoff as their agent.  And

15   our -- and now the funds themselves have claims

16   in this bankruptcy for billions of dollars

17   against this -- in this -- against -- in the

18   Trusteeship -- I'm sorry -- in this liquidation.

19   And the Trustee's position is, to the extent

20   that the Trustee has to pay those claims, these

21   defendants, these custodians who were supposed

22   to be holding the assets are joint tort feasors

23   and at least responsible for a share of the

24   damage and to pay for those claims.

25             JUDGE CARNEY:  My understanding of

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

27

1    New York law -- if I could have a second -- is

2    that if a joint tort feasor is going for

3    contribution against a fellow, that you need to

4    have paid up to at least your pro rata share

5    before you can have sustained the right of

6    contribution.

7             How do you reconcile your client's

8    situation with that?

9             MR. WARSHAVSKY:  Well, actually

10   under New York law to collect -- to actually

11   enforce a contribution judgment, we'd have to

12   pay more than our fair share, but under New York

13   law -- and we cited cases, and I'll bring the

14   case to you when I come back up on rebuttal --

15   but it's very clear that the action may be

16   maintained from the outset.  The right of

17   enforcing what we'll call the contribution

18   judgment only can occur once the Trustee has

19   paid more than his fair share.

20            What I'll also note is that in this

21   case the Trustee has satisfied the claims of 800

22   customers -- not of every customer -- but of

23   certain customers.  But, as I say, under New

24   York law -- and I will gave you the case names

25   -- New York Court of Appeals is very clear that

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

28

1    a defendant may maintain his or her action up

2    until and only is precluded from collecting the

3    money -- until he or she has paid more than his

4    or her fair share.

5              JUDGE CARNEY:  Thank you.

6              MR. WARSHAVSKY:  Thank you.

7              MR. LA ROSA:  Good morning, Your

8    Honors.  Mr. LaRosa on behalf of the Securities

9    Investor Protection Corporation.

10             I would like to focus on two

11   things:  Bailment and subrogation, those were

12   the topics we addressed in most detail in our

13   briefs, but bailment with particular reference

14   to the bailment created during the

15   pre-liquidation period, because it's really the

16   pre-liquidation bailment that's created by the

17   interaction between both 15c3-3 and the common

18   law of bailment that carries over into the SIPA

19   liquidation and enables the Trustee, the

20   successor to the bailee status of the

21   broker/dealer, to serve -- you know, to bring

22   actions as the bailee of customer property.

23             There are only two things that are

24   required for a bailment implied in law and

25   that's what we have here:  Lawful possession,

1    however acquired, however acquired -- and that

2    is the language that's found in the case law --

3    and a duty imposed by law that the bailee

4    account for the property in question as the

5    property of another.

6                   Rule 15c3-3, with respect to

7    property received by a broker/dealer from

8    customers, creates exactly those conditions.

9                   Under the rule, a customer --

10   quote/unquote -- and that's a term of art -- is

11   any person with whom a broker/dealer has an

12   account relationship and from whom or on whose

13   behalf a broker/dealer has received required

14   funds or securities.  When the broker/dealer has

15   established a customer relationship, the

16   broker/dealer has not only the right but the

17   obligation to reduce to possession funds and

18   securities tendered in the context of the

19   account relationship.

20                   So that obligation exists and that

21   obligation exists, importantly, irrespective of

22   what the broker intends to do with it.  The

23   broker's obligation is, once the property is

24   acquired apply, irrespective of the broker's

25   intent with respect to that property then

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

30

1    imposed by law.

2              So the broker's possession of

3    property tendered in the context of an account

4    relationship is lawful without regard to whether

5    or not the broker intends to steal the property,

6    comply with Rule 15c3-3.  It is a lawful -- it

7    is, in effect, a determination that, as a matter

8    of law, possession is lawful by virtue of the

9    nature of the relationship between the parties.

10   So the -- in our view, the element of lawful

11   possession is satisfied once the nature of the

12   relationship is established.

13              It's also clear that there is a

14   duty on the part of the broker/dealer to account

15   for the property received as the property of

16   another.  The broker/dealer is required to hold

17   in its possession at all times securities of the

18   type and in the quantity owed to all customers.

19   They don't have to be the same securities

20   tendered by the customers because the law

21   recognizes, as bailment law recognizes, that

22   fungible property can be substituted.

23              There's no reason why a

24   broker/dealer should have to segregate the same

25   dollar tendered by a customer because one dollar

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

31

1    is just like another; in the same way there's no

2    reason why a broker/dealer should have to

3    segregate a share of Xerox that is the same

4    class and issue as any other share of the same

5    class and issue, they're identical, they're

6    functionally identical.  So you have all of the

7    elements that are necessary for a bailment

8    implied in law.

9              Ratable distribution -- I think

10   there was a question about ratable distribution.

11   That is consistent with bailment.  When you have

12   bailment that -- and I think it's important to

13   recognize, both 15c3-3 and SIPA treat the

14   bailment that's created as, in effect, a

15   collective bailment.  The bailors, the customer

16   bailors collectively bail their property with

17   the debtor bailee.

18             When you have a collective bailment

19   and when fungible property that's collectively

20   bailed is co-mingled and is lost, bailment law

21   provides that the remaining property will be

22   distributed ratably to the bailors.  And you see

23   this most commonly, I think it was mentioned in

24   the commodities cases that come out of the

25   midwest.  A bunch of grain producers all take

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

32

1    their grain to the same warehouseman and all the

2    grain is dumped into the same grain silo and a

3    tornado comes along and blows the roof off and

4    half the grain is gone.

5              Well, it's okay to co-mingle the

6    property because it's fungible and it's

7    segregated on the books and records of the

8    warehouseman, so the warehouseman knows exactly

9    how much grain goes to each party, and that

10   conforms with the segregation requirements

11   imposed by bailment law.

12             And you can't distribute the

13   property that's left any way that's fair except

14   ratably, that's the only way to do it, you know,

15   consistent with fairness.  So it's been

16   recognized in a number of cases that where you

17   have that fact pattern, which is what you

18   typically have in a SIPA liquidation, ratable

19   distribution is appropriate and is consistent

20   with bailment.

21             With regard to subrogation.  SIPC

22   has subrogation rights that come from two

23   sources:  The common law and the statute.  The

24   statute provides expressly that SIPC shall have

25   subrogation rights.  There's nothing in the

**PICARD V. HSBC BANK, et.al.**　　　　　**ORAL ARGUMENT 11/21/12**

33

1　statute that says that those rights are limited

2　to claims against the customer fund.  In fact,

3　the only limitation is a temporal limitation.

4　SIPC can't assert its rights until after the

5　Fund of Customer Property has been allocated.

6　　　　　　　　Well, of course, that makes perfect

7　sense.  It wouldn't -- you know, to the

8　extent -- SIPC has a claim against the customer

9　fund as subrogee but it doesn't mean that just

10　because it has a claim against the customer

11　fund, it doesn't have a claim against anybody

12　else.  And certainly vis-à-vis its claim against

13　the customer fund, it can't assert that until

14　customer property has been allocated.  It

15　wouldn't -- it would be crazy -- in effect, it's

16　stating the obvious, but there isn't any other

17　limitation and to read into --

18　　　　　　　　JUDGE JACOBS:  Does SIPC get the --

19　what's left or do they take first dollar?

20　　　　　　　　MR. LA ROSA:  SIPC stands in the --

21　SIPC will only collect against -- vis-à-vis the

22　customer fund you mean?

23　　　　　　　　JUDGE JACOBS:  Yes.

24　　　　　　　　MR. LA ROSA:  Yeah, SIPC will

25　stand -- will only collect with respect to

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

34

1   customers who have been satisfied in whole.  So

2   SIPC stands in the shoes for purposes of

3   recovery against the customer fund of the

4   customers who have been satisfied in whole.

5   Remaining customers, you know, have -- the

6   so-called over the limits customers acquire

7   their ratable share based on -- whatever that

8   is -- based on their, you know, the amount of

9   their claims and the proportion of their claims.

10                  There's certainly nothing and

11  there's neither anything in the language of

12  78fff-3(a) and nothing in the legislative

13  history to the section that suggests that beyond

14  its statutory rights, that SIPC's common law

15  rights of subrogation are in any way limited.

16  The statute, in fact, on the contrary, says that

17  SIPC shall have all other rights that it may

18  have in law and in equity.

19                  Now, the defendants here try to

20  make a big deal about how this was a technical

21  amendment, and so on, but it was technical only

22  in the sense that it codified what had been

23  established in Redington and what had been

24  understood to be SIPC's common law rights --

25                  JUDGE JACOBS:  But do I understand

Case: 11-5044   Document: 151-4   Page: 35   05/07/2013   929603   125

PICARD V. HSBC BANK, et.al.          ORAL ARGUMENT 11/21/12

35

1    then that the SIPA Trustee seeks to replenish

2    the customer fund for the benefit of SIPC in

3    terms of the last dollars that would come into

4    that fund after individual customers have been

5    satisfied in whole?

6              MR. LA ROSA:  The -- in --

7              JUDGE JACOBS:  In other words --

8              MR. LA ROSA:  Yeah, go ahead.

9              JUDGE JACOBS:  -- is it 20 percent

10   up to a certain amount, is that it?  What's the

11   compensation from SIPA?

12             MR. LA ROSA:  It's up to 500,000

13   for a claim for securities.

14             JUDGE JACOBS:  Up to 500,000?

15             MR. LA ROSA:  Yeah.

16             JUDGE JACOBS:  Well, let's say it's

17   a million, then the first half million that goes

18   in allocable to that customer goes directly to

19   that customer?

20             MR. LA ROSA:  Well, as I say, if

21   that customer were -- let's take the

22   hypothetical where you have no property in the

23   Fund of Customer Property or where you've got a

24   property that -- SIPA's made its advance of a

25   half million dollars --

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

36

1   JUDGE JACOBS:  Let's says it's all

2   been stolen.

3   MR. LA ROSA:  -- it's all been

4   stolen, some money now comes in.  How do we

5   allocate that?

6   JUDGE JACOBS:  Yeah.

7   MR. LA ROSA:  Anybody with a --

8   SIPC would stand in the shoes of any customer

9   with a claim of $500,000 or less.  Any customer

10  with, say, a million dollar claim would receive

11  all of that -- all of the property until --

12  well, all of it until -- their ratable share.

13  SIPC only stands in the shoes of those --

14  JUDGE JACOBS:  But SIPC would only

15  collect a dollar after the million dollar loss

16  has been replenished to the tune of half a

17  million?

18  MR. LA ROSA:  In the case of one

19  customer, yes, correct.  If there were one

20  customer.  If there's were other customers, yes,

21  SIPC --

22  JUDGE JACOBS:  That's all I'm

23  asking.

24  MR. LA ROSA:  Yes, that's right.

25  We've said -- there's another

**PICARD V. HSBC BANK, et.al.**         **ORAL ARGUMENT 11/21/12**

37

1   reason, of course, why SIPC's subrogation rights

2   are -- or the enforcement of SIPC's subrogation

3   rights against third-party is compatible with

4   the distribution scheme, and that is that SIPC

5   is prevented by statute from interfering with

6   the Trustee.

7         I mean, if SIPC is seeking to

8   recover customer property, SIPC is stayed by the

9   automatic stay from bringing suit.  That's a

10  suit that has to be brought by the Trustee.  If

11  SIPC somehow were to recover customer property,

12  SIPC would have an obligation under the turnover

13  provisions of the Bankruptcy Code to give it to

14  the Trustee.

15        Either way, the property that's --

16  the customer property that is recovered is going

17  to be distributed through the allocation scheme

18  provided by SIPA and SIPA -- SIPC wouldn't and

19  doesn't have the power to put itself in front of

20  customers.

21        Thank you.

22        MR. SAVARESE:  Good morning, Your

23  Honor.  My name is John Savarese from Wachtell,

24  Lipton, Rosen & Katz, I'm counsel for Appellee

25  JPMorgan.  And consistent with allocation of

38

1    responsibilities that I outlined at the outset,

2    I'm going to concentrate my time on explaining

3    why this court's precedents concerning trustee

4    standing compel affirmance of both Judge

5    McMahon's decision and Judge Rakoff's decision

6    on standing grounds.

7              In doing so, I'm going to talk

8    about a line of cases that, interestingly, my

9    friends on the other side have not mentioned,

10   and that is the long and unbroken line of

11   decisions begun by the Supreme Court in Caplin

12   in 1972 and then continued thereafter

13   consistently over two decades by this court, in

14   which this court has definitively determined two

15   critical propositions:  Number one, that a

16   bankruptcy trustee has no standing generally to

17   sue third parties on behalf of the estate's

18   creditors; and, two, that the Trustee stands in

19   the shoes of the debtor and can, therefore, only

20   maintain those actions that the debtor itself

21   could have brought before the bankruptcy.

22              Now, every single time this court

23   has confronted an argument brought to it by a

24   trustee, saying that the trustee should be

25   permitted to bring claims against third parties,

Case: 11-5044    Document: 151-4    Page: 39    05/07/2013    929603    125

PICARD V. HSBC BANK, et.al.            ORAL ARGUMENT 11/21/12

39

```
 1    to hold those third parties responsible in part
 2    for injuries suffered by the bankrupt
 3    corporation's customers or creditors, this court
 4    has rejected that argument.
 5               And every time --
 6               JUDGE JACOBS:  Accepting then that
 7    a bankruptcy trustee stands in the shoes of the
 8    debtor because the fund is the bankrupt estate.
 9    I think your adversaries are arguing that the
10    SIPA Trustee stands in the shoes of the customer
11    because what you're looking at is a Fund of
12    Customer Property.
13               MR. SAVARESE:  Right.  Let me turn
14    to that.
15               The fact that the Trustee is
16    proceeding here under SIPA rather than under the
17    Bankruptcy Code does not mean that the Caplin,
18    Wagoner doctrine, which basically determines
19    trustee standing by asking the question:  Who
20    owns the claim?  It's a simple straightforward
21    test:  Who owns the claim?  That test does not
22    go out the window simply because we're here
23    before Your Honors talking about SIPA, and the
24    reason is grounded in the language of the SIPA
25    statute itself.
```

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

40

1          SIPA says -- and I believe Your

2     Honor, Judge Carney, mentioned this -- it

3     plainly states that SIPA Trustees -- and now I'm

4     quoting -- "have the same powers and title with

5     respect to the debtor and the property of the

6     debtor as the Trustee under Title 11," the

7     Bankruptcy Code.

8               It goes on to say that, "to the

9     extent consistent with this chapter, a

10    liquidation proceeding" -- which is what we're

11    talking about -- quote, "shall be conducted in

12    accordance with and as though it were being

13    conducted under Title 11," again, the Bankruptcy

14    Code.

15              So the same rules that this court

16    has developed over many years to refine and

17    define the limits of an ordinary bankruptcy

18    trustee standing, rules that this court has

19    announced and enforced in the whole Wagoner

20    line, must apply to SIPA trustees by the terms

21    of the SIPA statute itself.

22              All -- and coming back now to Your

23    Honor's question -- all that SIPA does

24    differently from the Bankruptcy Code is simply

25    move customers up the priority payment scheme.

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

41

1    That's all that's really different.

2                    At the end of the day those monies

3    still come out of the debtor estate, and this

4    statute never says a syllable about bailors,

5    bailees, bailment -- you can search high and low

6    in the statute and you will not find those

7    words -- nor does it create -- nor is there any

8    legislative history to suggest that it creates

9    some new juridical entity called a customer

10   property estate that has some new broad, roving

11   commission to bring all these claims.

12                    I'm sorry, Your Honor.

13                    JUDGE JACOBS:  I take it then your

14   argument is is that a bailor is simply someone

15   who moves up in the line?  I mean, if your

16   lawnmower is being repaired by a lawnmower

17   company that goes broke, you have a superior

18   claim on your lawnmower.

19                    MR. SAVARESE:  Precisely.  All that

20   the customers get under SIPA is moved up the

21   payment line, that's plainly what the statute

22   said, but that doesn't mean that the definition

23   of customer property, which simply is the cash

24   and the securities held in the broker's

25   accounts, somehow becomes some new juridical

1    entity that has some new power that Congress

2    never gave it to bring lawsuits.

3            JUDGE CARNEY:  Isn't it accurate to

4    say, though, that it has some different

5    characteristics in that, you know, membership

6    fees are collected and a fund is created, the

7    SIPC contributes up to half a million dollars

8    per individual account, creating a body that is

9    something greater and different from the regular

10   bankrupt estate?

11           Isn't that right?

12           MR. SAVARESE:  I agree, Your Honor,

13   that SIPC is a new entity created by the

14   statute, but I would say again in response that

15   SIPC is a creature of this statute.  It,

16   therefore, has to look to and be defined by and

17   be limited by those grants of power that

18   Congress gave it.  Those grants are limited,

19   they do not overturn Wagoner, they do not

20   overturn Caplin.

21           JUDGE CARNEY:  How do we deal with

22   Redington?

23           MR. SAVARESE:  Well, I hate to

24   trample on the toes of my good friend

25   Mr. Schnabl who is --

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

43

1        JUDGE CARNEY:  I'm sorry --

2        MR. SAVARESE:  -- our Redington

3   expert, but I would say two quick things, Your

4   Honor, if you'll permit me.

5        Number one, we believe that

6   Redington is simply not good law, that Judges

7   Rakoff, Judge Pollack and Judge McMahon got that

8   right; and, two, even if somehow Redington still

9   has a pulse, if it's on some legal equivalent of

10  life support, notwithstanding that the Supreme

11  Court reversed and then the panel on remand

12  vacated and the panel on remand determined that

13  there was no jurisdiction and dismissed the case

14  entirely, even if it somehow still survives,

15  there are two independent reasons why it is not

16  controlling here.

17        Number one, Redington's bailment

18  theory was invoked in a case where the trustee

19  had expressly asserted that the Weiss securities

20  brokerage itself was an innocent victim, in

21  other words, a very, very far cry from our case

22  where BMIS was an active participant in, was

23  totally controlled by Bernie Madoff.  Those are

24  not my words, those are the Trustee's words.

25        So, importantly, the Redington

**PICARD V. HSBC BANK, et.al.**               **ORAL ARGUMENT 11/21/12**

44

1    panel simply never had occasion to consider --

2    and, therefore, never decided -- whether the New

3    York black letter law that Judge Jacobs referred

4    to, the law that says a thief can never be a

5    valid bailee, was not at issue there.

6              Unlike the trustee in Redington,

7    therefore, the Trustee here, who is the

8    successor to a massive thief, Mr. Madoff and his

9    firm BMIS, is not and cannot be under New York

10   law a valid bailee, a wholly independent reason

11   to distinguish Redington.

12             Second reason to distinguish

13   Redington, very briefly, is that simply to the

14   extent it had standing decisions, those standing

15   decisions were solely related to whether the

16   trustee could bring implied causes of action

17   under Section 17 of the '34 Act, when we knew

18   and learned from the Supreme Court that that

19   decision -- that threshold decision by the panel

20   in Redington was erroneous, then those

21   subsidiary standing decisions I think go out the

22   window and have no force here.

23             Let me go next, if I may, to St.

24   Paul because Your Honor asked a good question

25   about St. Paul, and I think you have St. Paul

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

45

1    exactly right.

2              The Trustee here seeks to escape

3    from Caplin and Wagoner by arguing that St.

4    Paul, a decision from 1989, somehow created this

5    wholly new concept of generalized injury

6    standing for bankruptcy trustees that is again

7    somehow broader than the defined scope of

8    trustee standing that has been set forth in the

9    Caplin case and the Wagoner case and on.  St.

10   Paul simply does no such thing.

11             Indeed, this court said as much in

12   Pereira versus Farace, the decision from 2005.

13   In there this court specifically ruled that St.

14   Paul -- and I'm now quoting -- does not imply

15   that the Trustee's rights are greater than the

16   rights of the debtor corporation.  And then it

17   went on to reaffirm its adherence to Caplin and

18   Wagoner cited in Farace, and it concluded that a

19   bankruptcy trustee has no standing generally to

20   sue third parties on behalf of the estate's

21   creditors but may only assert claims held by the

22   bankrupt corporation.

23             JUDGE JACOBS:  What is a general

24   claim within the meaning of St. Paul?  What is

25   it talking about?  It's very difficult to tell.

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

46

1          MR. SAVARESE:  Right.  I think,

2     first of all, it's dictum.  The holding of the

3     St. Paul case -- if you go back and examine the

4     case -- the holding is a completely unremarkable

5     holding.  All it says is that as a matter of

6     state law, there Ohio law, the alter ego claim

7     belonged to the debtor estate and therefore was

8     perfectly normal for the trustee to be able to

9     pursue it, because, again, you asked that

10    Wagoner question:  Who owns the claim?  In St.

11    Paul they said the debtor owns the claim,

12    therefore, the Trustee has standing.

13          JUDGE JACOBS:  Well, in St. Paul

14    there was some quirk of Ohio law.

15          MR. SAVARESE:  I don't know whether

16    it was a quirk or not.  I mean, all of the

17    Wagoner cases, Your Honors, say we look to state

18    law.  You look at Hirsch, you look at Wagoner,

19    you look at Judge Winter's opinion in Mediators,

20    over and over and over again this court has

21    looked to state law to answer the question who

22    owns the claim.

23          In our case, no question about it,

24    the creditors, the customers of the failed

25    brokerage, BMIS, they own the claim.  These are

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

47

1   individual direct claims.  There's nothing

2   derivative about them.  This is an individual

3   injury that each of them suffered, each of them

4   made a decision at a particular time to invest

5   particular amounts of money.

6            If the duties -- the fiduciary duty

7   of the brokerage was owed to them and it was in

8   the end their money that was stolen by Madoff

9   and by BMIS.  So there's no question here, and

10  neither Judge Rakoff nor Judge McMahon thought

11  there was any question about the fact that under

12  New York state law the claims we're talking

13  about here, the claims that the Trustee purports

14  to bring, are ones that belong exclusively to

15  the creditor.  And in applying Wagoner in its

16  unbroken line of cases, you are led ineluctably

17  to the conclusion that the Trustee cannot bring

18  that kind of claim.  He cannot aggregate this

19  mass of individual direct claims belonging to

20  customers in the guise of SIPA and bring this

21  massive case.

22            Those individuals can choose --

23  exactly as the Supreme Court said in Caplin,

24  individuals can choose whether or not they want

25  to bring those kinds of cases and --

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

48

1          JUDGE JACOBS:  Those cases -- some

2     of them are pending, they're just subject to the

3     automatic stay?

4          MR. SAVARESE:  Yes, there's a whole

5     host of cases out there where individuals of

6     various sorts and institutions of various sorts

7     have chosen to bring claims against third

8     parties.  No one would say they don't have

9     standing.  They, indeed, very consistently with

10    Wagoner, we would agree that they have standing.

11    We passionately think on the merits with respect

12    to JPMorgan that they are wrong about us --

13          JUDGE JACOBS:  I'm not surprised.

14          MR. SAVARESE:  -- but that question

15    is not before this court.

16          I see that the red light is on.  If

17    Your Honors have any other questions for me, I'd

18    be happy to address them.

19          JUDGE JACOBS:  Thank you very much.

20          MR. SAVARESE:  You're welcome.

21          MR. MOLONEY:  Good morning, Your

22    Honors.  My name is Tom Moloney and I'm going to

23    be speaking on behalf of the HBSC -- HS -- I

24    guess HSBC defendants -- and, as Mr. Savarese

25    said, I'm going to focus on the statute, though

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

49

1    to the extent he already covered some of the

2    statute, I'm going to try to do a deeper dive

3    into some of the provisions I think are

4    specifically going to be helpful to the court in

5    answering some of the questions you've asked so

6    far this morning, but before that I want to make

7    had a couple of big picture points.

8              One big picture point is -- relates

9    to the whole issue of whether the SIPA statute

10   creates a separate customer fund that is not

11   property of the debtor.  That is absolutely

12   incorrect.  If you look at the statute, the

13   property is still property of the debtor, it's

14   just a priority, or, as the Supreme Court said

15   in Holmes, the claims of creditors are

16   subordinated to that property, and this court

17   has actually ruled precisely -- in a case

18   precisely on point on that issue, in the

19   Rosenman case.  In the Rosenman Family case,

20   which was decided by SIPC, this court dealt with

21   the situation where -- involving Madoff where a

22   customer sent money into Madoff ten days before

23   the broker/dealer ended up filing for

24   insolvency, and then he said I want it back,

25   just like they said he could get it back because

Case: 11-5044    Document: 151-4    Page: 50    05/07/2013    929603    125

PICARD V. HSBC BANK, et.al.          ORAL ARGUMENT 11/21/12

50

1    it's not the debtor's property.  And this court

2    said, no, it's the debtor's property, we'll

3    decide later on whether or not you qualify as a

4    customer and have priority.  That's a separate

5    issue which the panel said we can't decide now

6    on this record, but that's the debtor's property

7    and that's the way the statute works.  So it's

8    the debtor's property.

9              The second big picture point I

10   think is important to make is I think bailment

11   is in many ways a red herring here.  The

12   statutes that they're referring to only create a

13   bailment in one limited circumstance.

14             15c3-3 is a rule that allows a

15   broker/dealer to use cash and securities in

16   their business.  If you read through the rule,

17   it allows them to pledge it, it allows them to

18   repo it, it allows them to use it in all kinds

19   of activities, to make it available to people

20   who are doing short sales and then they have to

21   put money in an account to make sure that they

22   can get it back or potentially satisfy the

23   customer's claim otherwise.  It's a customer

24   protection rule, but it has nothing to do with

25   bailment, it doesn't mention bailment, it

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

51

1   doesn't create any rights to bring suits on

2   behalf of the customers.

3            Similarly, the SIPA statute creates

4   only one form of bailment.  That's for customer

5   name securities.  If you provide a broker/dealer

6   with customer name securities -- I've been a

7   SIPA Trustee in three cases.  I've never seen

8   it.  I don't think it even happened in Lehman,

9   didn't happen in Madoff, very rarely does

10  someone actually create customer name

11  securities, you can and if you did, then that's

12  a true bailment is established --

13           JUDGE JACOBS:  Could you explain

14  that because I'm not sure I follow what that is?

15           MR. MOLONEY:  If you actually tell

16  the broker/dealer that the securities could be

17  registered in your name so title is not actually

18  transferred to the broker/dealer --

19           JUDGE JACOBS:  So the broker/dealer

20  can't use it for any --

21           MR. MOLONEY:  Correct, can't use it

22  for any purpose.  Nobody does this.  That's the

23  only bailment that the SIPA statute creates.

24  Otherwise, it creates a different scheme.  It

25  creates a scheme of priorities and, as Your

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

52

1    Honor pointed out, of distributions, and it does

2    not return you necessarily your property.  Even

3    in Lehman they did not necessarily return

4    property.  If it's unreasonable for the

5    broker/dealer to go out and buy securities

6    because of market disruption, you could return

7    cash rather than property.  If there's a margin

8    account and you didn't pay back the margin, you

9    don't get back your property.  There's all kinds

10   of rules there.  It's a regime of customer

11   protection, but it's not a bailment.

12              In fact, the whole point of these

13   statutes was to move away from the common law

14   bailment.  One of the statutes was bailment was

15   difficult because then you had to identify your

16   property, it put limitations on the ability of a

17   broker/dealer to use the property, it gave

18   duties to the broker/dealer or to Mr. Picard,

19   I'm sure he's not carrying out at the moment.

20              This court and the Southern

21   District Court has often said that a trustee is

22   not a substitute broker/dealer.  So he's not

23   acting as a bailee.  He's acting pursuant to a

24   statutory scheme.  So I think those are a couple

25   of big picture points.

1           One other big picture point I would

2    make is about St. Paul.  I think the most

3    important thing to understand about St. Paul is

4    in that case what was happening is the

5    corporation itself suffered an injury.  It was

6    being deprived of its assets.

7           So if you strip assets away from a

8    corporation, every creditor of the corporation

9    will indirectly suffer harm as a result of the

10   direct harm to the corporation.  That's what

11   circumstance St. Paul dealt with.

12          Those are not the claims here.  To

13   put it in context and answer a question Your

14   Honor asked, our client, HSBC, did not provide

15   any services to Madoff.  We had no duty to

16   Madoff.  We provided custodial or administrative

17   services to 12 so-called feeder funds who, you

18   know, they were foreign funds, they're foreign

19   hedge funds, investors invested in those funds

20   and those funds, in turn, made investments into

21   BLMIS.

22          We're being sued all over the world

23   by those funds and by those investors and we're

24   defending those lawsuits, but they're the

25   parties who, if anyone was injured by our

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

54

1    failure to carry out our duties as administrator

2    or as a custodian, were directly injured by that

3    injury.  And the Trustee who's sitting here, he

4    has suffered no direct injury whatsoever as a

5    result of what we did.  We provided him with

6    just more money into his estate.

7                    JUDGE JACOBS:  Well, hypothetically

8    assume you have a bank that did violate the law,

9    that was hand in glove with the Ponzi schemer, a

10   big bank, how would SIPC get its money back from

11   such an entity, either by subrogation or by

12   suit, or whatever, or does it have to just wait

13   until the customer hits the jackpot, collects

14   every dime and dollar, and then take its money

15   from that judgment?

16                    MR. MOLONEY:  I think there's

17   really three answers to that, Your Honor, in

18   this case.

19                    JUDGE JACOBS:  One will do.

20                    MR. MOLONEY:  The three answers to

21   that in that case is -- the first answer is that

22   in our case the customers -- the investors, the

23   foreign investors, are not customers so SIPC is

24   not paying them.

25                    The 12 feeder funds, they're suing

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

55

1    11 of them, so SIPC is not paying them either.

2    So SIPC is not advancing funds for these people.

3    The money for whom SIPC is --

4              JUDGE JACOBS:  But my hypothetical

5    dealt with --

6              MR. MOLONEY:  In a hypothetical

7    situation -- in a different situation where they

8    -- so I'm just talking about in our case, the

9    case involving HSBC --

10             JUDGE JACOBS:  But you're talking

11   also generally about the SIPA scheme?

12             MR. MOLONEY:  In the bigger scheme

13   of things, SIPC's rights are specifically

14   defined as a subrogation right to the net equity

15   claim against the broker/dealer.  Those claims

16   -- that money will come out only after all other

17   net equity claims have been satisfied.

18             Additionally, to the extent SIPC

19   pays the administrative costs of the estate and

20   pays the fees of the lawyers involved, that

21   money will come out ahead of all unsecured

22   creditors as to an administrative claim and

23   anything that's left over.

24             That's what the statute provides,

25   for SIPC to get the money back that is provided

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

56

1   in advancing of the scheme.  It does not -- to

2   the extent SIPC has some additional independent

3   claim, but not a subrogation claim, it can bring

4   that claim against parties, it's tried to do

5   that --

6           JUDGE JACOBS:  It's not a -- it

7   kind of looks like it would be a subrogation

8   claim, doesn't it?

9           MR. MOLONEY:  Yes.

10          JUDGE JACOBS:  I mean, you make

11  good someone's loss to the tune of half a

12  million dollars and then -- and if there's a

13  person who's committed wrongdoing who is

14  sufficiently deep pocket to pay it, why can't

15  SIPC replenish its funds and repay the taxpayer?

16          MR. MOLONEY:  I think Holmes dealt

17  with this in part, Your Honor, in saying that to

18  try to imply an additional equitable subrogation

19  right to SIPC raises a lot of unanswered

20  questions, and I'll just mention a few of the

21  them here.

22          One thing before I do is, they were

23  not correct in saying there's no legislative

24  history on point.  Legislative history is cited

25  in JPMorgan brief at Page 51 which indicated,

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

57

1    the claims of SIPC as subrogee, except as

2    otherwise provided, should be allowable only as

3    claims against the general estate.  That was a

4    SIPC task force before the statute was enacted.

5    So they understood that they were getting a

6    limited right.

7              I think the legislation is clear,

8    as pointed out in the opinions, but the

9    legislative history is also clear that they

10   understood they were getting a limited right.

11   But if you want to posit that they have this

12   additional right beyond what the statute

13   provides, then you have to ask the first

14   question is:  Who are they subrogated to?  The

15   person who was the -- who took out the insurance

16   was BLMIS, the person who actually pays the

17   claims is BLMIS.

18              So if they're subrogated claims of

19   BLMIS against other parties, they're going to be

20   standing in the same in pari delicto defense

21   that we have against BLMIS.

22              The second question --

23              JUDGE CARNEY:  I'm sorry, when you

24   say who took out the insurance, you mean who

25   participated as broker/dealer in creating the

1    fund that SIPC --

2              MR. MOLONEY:  Well, broker/dealers

3    created the fund and they created the insurance

4    for the broker/dealer, BLMIS.  SIPC doesn't

5    actually pay any claims.  All they do is advance

6    money to this broker/dealer so that it pays a

7    portion of a net equity, not the real claim.

8              So you got a situation as to do

9    they actually have a claim against somebody else

10   other than BLMIS.  Then of course, Your Honor,

11   you have the New York State's rule about make

12   whole which is that for this other claim they

13   would also have to wait until these funds and

14   these investors actually were made whole before

15   they could actually bring a claim under New York

16   equitable subrogation law, if that's what they

17   were relying on.

18             You know, whether or not they're

19   relying on New York -- Holmes said that, look,

20   we can't start figuring this out.  The statute

21   gave them a specific right.  They had not

22   articulated a theory that gets them a broader

23   right.

24             If you look at the facts of this

25   case, I don't -- they don't have -- the people

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

59

1    they've been subrogated to never heard of HSBC,

2    many of them may have invested before HSBC even

3    was involved in the case, in terms of talking

4    about reliance.  You'd have to bring a claim on

5    behalf of 2000 people, each one would have a

6    different story against someone who didn't have

7    any dealing with them.

8            By comparison, the funds who are

9    suing us and the investors who are suing us

10   directly, you know, for the same $9 billion --

11   they're all three groups are suing us for the

12   same $9 billion.  And the Wagoner rule kind of

13   allocates who has standing and says that, look,

14   between these three groups the person who has

15   standing is the person who was directly injured.

16           Your Honor, I think that's the rule

17   that has to apply here.

18           JUDGE JACOBS:  Is there a reliance

19   element to any of the claims that are being

20   asserted against your client?

21           MR. MOLONEY:  Of course there's a

22   reliance element, Your Honor.  You know, the

23   aiding and abetting fraud.  What fraud did we

24   aid and abet and how did we aid and abet the

25   fraud?  Someone who invested five years before

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

60

1  HSBC was even involved in any way in this

2  scheme, how could they say we aided and abetted

3  a fraud as to them?  How did we aid and abet any

4  misrepresentation that was made to them at that

5  point in time?

6              So I think that someone who's never

7  heard of HSBC, who did not come through one of

8  these 12 feeder funds, how could they say that

9  we somehow aided and -- that they relied on our

10 involvement in any way or that we aided and

11 abetted any statement that they relied on by

12 Bernie Madoff?

13             So I think reliance -- I think Your

14 Honor is dead on that reliance is exactly on

15 point and it's why -- it's why -- it's what

16 animated Wagoner's decision, as Your Honor is

17 aware.

18             In Wagoner they said that, look,

19 the company couldn't rely on the false reports

20 of the accountants, the company produced the

21 phony books.  That's the case here.  They

22 produced the phony books standing in the shoes

23 of the debtor, which is what they stand in the

24 shoes of for purposes of bringing these type of

25 claims.

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

61

1          JUDGE CARNEY:  One quick question

2     before you sit down, if I may.

3          MR. MOLONEY:  Yes.

4          JUDGE CARNEY:  Is the fund that

5     SIPC draws on to pay harmed customers, is there

6     any taxpayer money in that or is that all

7     broker/dealer membership fees?

8          MR. MOLONEY:  It's all

9     broker/dealer membership fees, Your Honor, which

10    they raised and then they stopped when they

11    thought they had a billion dollars and it was

12    enough, and then they had Lehman and they had

13    Madoff and now they're raising those fees again

14    over -- but all broker/dealers pay a fee --

15          JUDGE JACOBS:  The government is

16    never on the hook for this?

17          MR. MOLONEY:  The government is

18    never on hook.  There's a provision that says

19    that the government can make --

20          JUDGE JACOB:  Even after the money

21    is used up?

22          MR. MOLONEY:  Yeah, there's a

23    provision that says the government can loan to

24    SIPC of up to a certain amount of money.  And

25    that's -- I think it's up to $300 million

Case: 11-5044   Document: 151-4   Page: 62   05/07/2013   929603   125

PICARD V. HSBC BANK, et.al.          ORAL ARGUMENT 11/21/12

62

1    dollars, last time I remember looking at the

2    statute, but they have to pay it back.

3              So the government is not paying

4    this money.  It's the broker/dealer community is

5    paying the money.

6              JUDGE JACOBS:  Thank you.

7              MR. MOLONEY:  Thank you, Your

8    Honor.

9              MR. SCHNABL:  Good morning, Judges.

10   My name is Marco Schnabl.  I'm with the Skadden,

11   Arps firm and I owe Mr. Savarese a commission

12   for having addressed some of the subjects.

13             I will briefly rise simply to urge

14   the Court to leave a case, Redington against

15   Touche Ross, where it is, as we said, deader

16   than a doornail.  It is a case that was reversed

17   by the Supreme Court, it was vacated by this

18   court and then dismissed by this court and I

19   need to go --

20             JUDGE JACOBS:  And you don't think

21   it's persuasive?

22             MR. SCHNABL:  I will get to that.

23   It is neither binding nor is it persuasive.

24             JUDGE CARNEY:  Just one second.

25   You said it was vacated by the Supreme Court, it

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

63

1   was, but it made -- there were holdings that

2   were not addressed by the Supreme Court.  Isn't

3   that correct?

4           MR. SCHNABL:  I may have misspoken

5   or not said it correctly.  It was vacated by

6   this court, not the Supreme Court.  It was

7   reversed by the Supreme Court and then it was

8   vacated by this court in its entirety, and then

9   it was dismissed for lack of subject matter

10  jurisdiction at the end of the process, and let

11  me go through it so this is placed in context.

12          In Redington -- by the way, it is

13  worthwhile observing that this 35-year-old case

14  is being resuscitated every time by SIPC and

15  Trustee when they want to ask for courts for

16  these implicit rights that they've had 35 years

17  to ask from Congress and that have never gotten.

18          That is an interesting observation

19  because counsel for SIPC said that a certain

20  provision codified what -- in the '78 amendment

21  codified what Redington said.  It must have been

22  a very insightful codification because the

23  legislative history long precedes -- that says

24  that it was a technical amendment -- long

25  precedes the opinion in Redington.

**PICARD V. HSBC BANK, et.al.**               **ORAL ARGUMENT 11/21/12**

64

1           In any event, in Redington three

2     giants of this court:  Judges Lombard, Judge

3     Timbers and Judge Mulligan, engaged in the kind

4     of debate that made them the giants they were.

5           And in that case this court held

6     that there was a private right of action under

7     17(a) on behalf customers of the failed broker

8     to sue an accountant that was in direct privity

9     with that broker.

10          Having invented a cause of action

11    that the Supreme Court later told us did not

12    exist, they had to invent a plaintiff, and the

13    plaintiff they invented was the Trustee as

14    bailee of customer property and SIPC as an

15    equitable, equitable subrogee to bring to assert

16    these claims.

17          The Supreme Court takes the case

18    and reverses on the threshold issue of the

19    existence of a right of action under 17(a).

20    Those were the heady days of '78 when private

21    right of actions existed behind every word and

22    every statute.  The Supreme Court says there is

23    no private right of action.  It comes back to

24    this court and then judge -- the three panels,

25    three panel, not a clerk, not a single judge,

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

65

1    the three judge panel vacates the entire

2    judgment.

3          The litigation continues for a

4    period -- to the end of '79 because there is a

5    parallel state proceeding in which these common

6    law claims -- common law claims against the

7    accountant are being brought and trustee and

8    SIPC wanted to be in federal court.  They say

9    there must be some form of jurisdiction to bring

10    these cases here, some plenary jurisdiction, and

11    the court finally, the same panel in what we

12    have called Redington 3 at 612 F.2d 68, says,

13    no, absent 17(a) there is no subject matter

14    jurisdiction in this court and affirms Judge

15    Wyatt's original dismissal of the case.

16          And let me observe that when Judge

17    Lombard writes the opinion saying there is no

18    subject matter jurisdiction, he characterizes

19    the Supreme Court as having reversed the

20    decision to allow the trustee to maintain a

21    private right of action.  He goes well beyond

22    saying it has reversed the existence of 17(a).

23          Now, is this a binding decision, is

24    this a decision to which this tribunal has a

25    stare decisis obligation?  I suggest it is not

66

1    for any of the following three reasons, let

2    alone all of them collectively.

3              It is vacated and we've offered

4    case law for the proposition that a vacated

5    opinion absolutely has no precedential value.

6    The court -- this court found that it had no

7    subject matter jurisdiction and, therefore, on

8    an elemental understanding of that conclusion,

9    we know that it had no power to speak on the

10   matter, and, therefore, what it did say really

11   is a nullity.

12             Number three, the -- all the

13   rulings are stripped of precedential value by

14   the fact that the Supreme Court reversed on what

15   is a threshold issue, the existence of the cause

16   of action, and we have offered cases like

17   Newdow, Picard against JPMorgan, LaBarbrea,

18   Gutierrez all in our submissions that document

19   why these three reasons, independently and

20   collectively, strip the case of precedential

21   value.

22             The question then is:  Is it a

23   persuasive case?  And let me suggest the reasons

24   my distinguished colleagues have said, it simply

25   isn't persuasive --

1              JUDGE CARNEY:  Excuse me, before

2      you get to persuasiveness, I noted that in the

3      BDO Seidman litigation in the year 2000, we

4      discussed Redington at some length, and I wonder

5      if you could address the meaning of that,

6      please.

7              MR. SCHNABL:  Absolutely.  I'm

8      jumping ahead because that's a question I was

9      going to observe, that in the sphere of cases to

10     which this court might arguably have some stare

11     decisis observation, I know of only two.  BDO

12     Seidman is one and it was written, as I

13     remember, by now Justice Sotomayor.  And the one

14     thing that is clear is that this court didn't

15     endorse Redington, it simply assumed Redington

16     to be the law, and then proceeded to dismiss on

17     12(b)(6) basis.

18             It did not offer an opinion, as I

19     read the case, as to the accuracy, the

20     controlling power or the persuasiveness.  It

21     didn't have to.  It dismissed on 12(b)(6) basis

22     and the issue really wasn't decided.

23             Then there was Holmes, Your Honor.

24     Coming from the Supreme Court it is sometimes

25     regrettably binding on this court, and it is

1 touted as having endorsed Redington.

2    In fact, it did no such thing.  Not

3 only did it say that the SIPC subrogation theory

4 is fraught with all manner of unanswered

5 questions and then went on to decide this RICO

6 case on proximate cause, it specifically said in

7 footnote 17 "we express no opinion."

8    Now, in English that means we

9 express no opinion about Redington.  It simply

10 observed the existence of Redington and

11 expressed no opinion.

12    So as far as I'm concerned, I am

13 not aware of any case to which this court owes

14 some form of stare decisis respect that has ever

15 endorsed Redington, wholly apart from its lack

16 of binding value.

17    So it requires me to say:  Why

18 isn't it persuasive?  Well, I'm tempted to start

19 with what is dangerous because you, Judge

20 Jacobs, ask how does SIPC get its money back.

21    Well, that is -- betrays a

22 temptation of statutory improvement that the

23 Supreme Court said in Redington one ought not to

24 engage in.

25    JUDGE JACOBS:  Well, we do our

Case: 11-5044   Document: 151-4   Page: 69   05/07/2013   929603   125

PICARD V. HSBC BANK, et.al.          ORAL ARGUMENT 11/21/12

69

1   best.

2              MR. SCHNABL:  I understand.

3              As Mr. Moloney discussed, this

4   isn't the government's money.  This comes from

5   the industry.  It's just not there in the

6   statute.  What the statute provides is what

7   Mr. Moloney discussed, subrogation rights

8   against the estate.

9              So let me observe that it is not

10  persuasive, even in those aspects which deal

11  with standing, because it really, in adopting

12  both of these conclusions, suffered from the

13  same vice that the Supreme Court said it had

14  suffered in 17(a).  And we can see it because,

15  frankly, Judge Mulligan was declared to be

16  right, I knew him to be right, as the Supreme

17  Court said, and then he became a partner at

18  Skadden, so he's doubly right.

19              Another reason, let me say, there

20  is no room, as Mr. Savarese said, to extend it,

21  to extend Redington, even if it were a good law

22  to the entirely particularized world of these

23  multitudinous claims when, in fact, the narrow

24  holding in Redington is that there is standing

25  with respect to a direct claim of a regulatory

**PICARD V. HSBC BANK, et.al.**            **ORAL ARGUMENT 11/21/12**

70

1    nature against someone with privity.

2              None of these have privity.  We are

3    a parent of some investment advisor somewhere in

4    Europe.  The multitudinous difficulties of

5    extending the Redington decision to this context

6    were recognized by Judge Rakoff.

7              The bailment theory, we have talked

8    about the bailment until we are blue in the

9    face.  There is no real bailment.  There is a

10   discussion about bailment.  15c3-3 doesn't speak

11   about bailment.  There isn't any bailment here.

12   They're trying to sue third parties and return

13   it according to SIPA's structure.  There is no

14   return of property to particular customers that

15   can be identified as their property.  Even if it

16   is fungible, it is going to be distributed under

17   the SIPA structure.

18             The entire construct of this

19   equitable subrogation clashes with the very

20   structure the '78 amendment put in place, as

21   Judge Rakoff determined, because it is

22   inconsistent with the priority that puts SIPA

23   below the customers.

24             As my time is over, I will also

25   call to Your Honors' attention, because we have

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

71

1    discussed it before, and given the way we're

2    doing this, there is a temptation to improve on

3    my colleagues -- I call to Your Honors'

4    attention 78lll for the definition of customer

5    property because it is a good habit actually to

6    read the statute.

7              It says it's cash and securities,

8    and then goes through each of these categories:

9    Securities, resources, cash, and the catchall at

10   the end says, "and any other property of the

11   debtor which, upon compliance with applicable

12   laws, would have been set aside or held for the

13   benefit of customers."

14             I am not aware that when I put a

15   hundred dollars at a broker, I'm also depositing

16   my claims against third parties, because if that

17   is the case, somebody better tell me that, and

18   it's not in the statute.

19             The notion that customer property

20   -- leaving aside the fiction that there is a

21   separate Fund of Customer Property -- that

22   customer property entitles the Trustee to sue

23   third parties is nowhere in the statute and it's

24   nowhere starting with the definition of customer

25   property.

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

72

1          Thank you.

2          MR. KING:  May it please the Court,

3     Marshall King from Gibson Dunn & Crutcher on

4     behalf of the UBS defendants.

5          My plan is to discuss the issues of

6     contribution which the Trustee has raised, and

7     if time permits or if Your Honors have any

8     questions, the alternative ground for affirmance

9     of SLUSA preclusion that we have argued here.

10          On contribution there are really

11     three key points that I want to make:  One is

12     that there is no dispute among the parties that

13     there is no right of contribution under SIPA or

14     under federal common law for the claims at issue

15     here.

16          The Trustee -- Judges McMahon and

17     Rakoff both held that there was no such federal

18     right of contribution.  The Trustee does not

19     argue otherwise here.  In fact, he runs away

20     from federal law arguing that New York law is

21     the source of his contribution claim, which

22     brings me to my second point, of course, which

23     is that state law here doesn't apply because the

24     underlying obligation for which the Trustee

25     seeks contribution is an obligation imposed by

**PICARD V. HSBC BANK, et.al.**               **ORAL ARGUMENT 11/21/12**

73

1   federal law.

2             The Supreme Court held in Northwest

3   Airlines that where state law supplies the

4   appropriate rule of decision, the court can look

5   to state law for contribution rights and see if

6   the state law implies those rights on behalf of

7   a party that pays out more than its fair share,

8   but the way the Supreme Court and this court

9   have analyzed and assessed what supplies the

10  rule of decision is by looking to the source of

11  the underlying obligation for which the claimant

12  is liable.

13            In Northwest Airlines the issue was

14  a claim against the defendant under the Equal

15  Pay Act and under Title VII and the court

16  rightly said that, therefore, is a matter of

17  federal law whether that defendant has a

18  contribution claim against third parties who

19  allegedly contributed to the injury.  They held,

20  of course, that it did not have a contribution

21  right in that circumstance, but it does not

22  endorse state law contribution in that

23  circumstance.

24            In this court, in Herman versus RSR

25  Security Services, the court applied Northwest

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

74

1    Airlines in a very similar manner.  The

2    defendant there was liable for violations of the

3    Fair Labor Standards Act.  The court first held

4    that the FLSA did not give a right of

5    contribution under federal -- either implied by

6    law in the statute or under federal common law

7    and it rejected the argument that the defendant

8    made that he should have a state law

9    contribution right.

10                   It said, and I'm quoting, "here

11   federal law, not state law, supplies the

12   appropriate rule of decision because the instant

13   claim has been brought solely pursuant to the

14   FLSA."

15                   In addition to Judges McMahon and

16   Rakoff below and the decisions that are on

17   appeal here, other judges in the district courts

18   have applied and followed a similar analysis.  I

19   think Judge Mukasey's decision in LNC is a very

20   good expression of the issue and holds -- again,

21   I'm quoting -- "the source of a right of

22   contribution must be an obligation imposed by

23   state law.  If the underlying obligation is one

24   imposed by federal law, the contours of that

25   obligation also are determined by federal law."

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

75

1          In applying this rule in LNC, Judge
2    Mukasey found first that there was no right of
3    contribution under the Trust Indenture Act.
4    There was a claim against the defendant under
5    the TIA that Judge Mukasey said you cannot seek
6    contribution for that.
7          What he then went on to hold,
8    though, is there was also a claim for state law
9    breach of fiduciary duty against the defendant
10   there, and he said for that claim you can assert
11   a state law contribution claim.
12          So that's exactly what we have here
13   -- that distinction is one that applies here,
14   and that is that the obligation that the Trustee
15   is required to pay here is an obligation imposed
16   by federal law, by SIPA under the net equity
17   obligations of the statute.
18          It's irrelevant -- the Trustee
19   says, well, I've got these -- I've claims -- my
20   state law aims are aiding and abetting claims.
21   My state law claims arise under New York law.
22   It's irrelevant that that's what the claimants
23   might have against us.
24          What matters is what is the claim
25   against the Trustee.  The claim for which that

Case: 11-5044   Document: 151-4   Page: 76   05/07/2013   929603   125

PICARD V. HSBC BANK, et.al.                ORAL ARGUMENT 11/21/12

76

1    -- the Trustee seeks to have us contribute to,

2    and that is what supplies the applicable rule of

3    decision, and here that is only federal law and

4    not state law and, therefore, state law simply

5    has no application here.

6              Finally, my third point on

7    contribution.  Even if you could get to the idea

8    that New York state law would apply, the New

9    York state law requires that the parties seeking

10   contribution be liable for damages, that's what

11   the statute says, liable for damages for the

12   same injury to property.  That's CPLR 1401.

13             The Trustee's obligation here to

14   distribute customer property to customers of

15   Bernard Madoff in accordance with net equity

16   claims is not liability for damages.  It's not

17   tort liability at all.  Net equity is a

18   mathematical formula.  There are different ways

19   one can apply it, as Your Honor held last year

20   in the Net Equity decision, but it's a

21   mathematical formula that does not require

22   anyone, no customer is required to prove tort

23   liability against the Madoff brokerage firm.

24             And Your Honor, in fact, in that

25   decision made clear that we aren't talking about

**PICARD V. HSBC BANK, et.al.**　　　　**ORAL ARGUMENT 11/21/12**

77

1    -- SIPA does not protect against fraud.  That is

2    not what SIPA is designed to do.  SIPA is

3    designed to distribute money equitably when a

4    broker/dealer goes insolvent.  It is not a fraud

5    statute.

6            And, therefore, the claims against

7    the estate, the claims against the customer

8    property fund are not tort claims.  They are

9    simply a statutory mathematical calculation.

10            JUDGE JACOBS:  It doesn't matter

11    why this property vanished?

12            MR. KING:  It does not matter why

13    property vanished.  And here, of course, there

14    is no finding that any one person, any customer

15    has a fraud claim or is recovering on a fraud

16    claim.

17            There's an interesting application

18    of this.  It's in an older case called In Re MV

19    Securities that we cited in our papers.  It's a

20    bankruptcy court decision from 1985.  There a

21    customer of a broker/dealer brought and won an

22    arbitration claim against the broker/dealer

23    before the SIPC -- the SIPA insolvency

24    proceeding started.  They won an arbitration

25    claim on the ground that the investment that was

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

78

1   made on behalf of the customer was unsuitable

2   for that particular investor.

3                The court, however, held that that

4   claim, that arbitration award was not a customer

5   claim, it was not protected as part of what SIPA

6   is designed to protect and, therefore, that

7   person didn't have a customer claim.

8                Had the broker/dealer been holding

9   securities on her behalf, she would have had a

10  customer claim, but that's not what was at

11  issue.

12                What was at issue was, similar to

13  here, a fraud claim, a wrongful acting claim

14  that customers might have.  What Judge Abram in

15  the bankruptcy court said, "SIPA does not

16  protect customer claims based on fraud or breach

17  of contract.  SIPA's primary intent and policy

18  are to protect customers who have cash and

19  securities being held for them by a

20  broker/dealer, rather than to serve as a vehicle

21  for the litigation of claims of fraud or

22  violations of Rule 10b-5."

23                So whether you look at this as a

24  matter of not having a claim under federal law,

25  if you could get to the issue of state law, you

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

79

1    still wouldn't have a right of contribution in

2    the debtor here because they aren't paying tort

3    liability, they aren't payable damages to

4    customers.

5              Briefly, I want to just touch on

6    this alternative ground for affirmance that

7    everyone argued below was not addressed by

8    either Judges McMahon or Rakoff but which does

9    provide a ground for affirmance if the Court

10   ever needs to reach it and that's SLUSA

11   preemption, and I'll be brief on that.

12              There are really two issues that

13   are in dispute:  One is, frankly, rather simple,

14   I think.  It's a question of whether the fraud

15   is in connection with the purchase or sale of a

16   covered security.  The "in connection with"

17   requirement the Supreme Court in Dabit says is

18   to be broadly construed, that this court in

19   Romano said that that's satisfied if the claims

20   necessarily allege, necessarily involve, or rest

21   on the purchase or sale of securities.  And

22   nearly every single case at the District Court

23   level that's looked at the Madoff case, the

24   Madoff fraud, has held that it is in connection

25   with the purchase or sale of securities.

**PICARD V. HSBC BANK, et.al.**              **ORAL ARGUMENT 11/21/12**

80

1          There is one outlier case called

2     Anwar.  It's probably wrongly decided, in light

3     of the overwhelming authority to the contrary,

4     but even there the reason that Judge Marrero

5     held that it wasn't in connection with the

6     Madoff fraud was because there were claims by

7     investors in feeder funds which then invested in

8     Madoff.  And he held that there was a separation

9     between the fraud that was alleged to have

10    defrauded these folks to invest in the feeder

11    fund and from the covered securities that Madoff

12    was supposed to be buying.  Here none of that,

13    of course, is present.  The claims he's bringing

14    are on behalf of customers directly.

15          The more interesting question is

16    whether this is a covered class action.  And

17    here we do think that it is because these claims

18    are literally being brought on behalf of

19    customers.  It is not just that customers will

20    benefit by a recovery to the estate.  These are

21    being brought on behalf of those customers.

22          The counting provision of SLUSA,

23    which the Trustee and SIPC rely on, simply

24    aren't relevant.  The Trustee may well be one

25    person, but the claims he's bringing are on

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

81

1     behalf of more than 50 -- more than 50

2     customers.

3                    The Trustee calls the counting

4     provision, he calls it an entity exception or an

5     entity exemption, and there is some case law

6     that uses that term, but the statute doesn't say

7     it's an exception, the statute doesn't call it

8     an exemption.  The statute says this is how you

9     count people.  And if you're a corporation or a

10    trustee and you aren't organized solely for the

11    purpose of bringing the claim -- or for the

12    purpose of bringing the claim -- it doesn't have

13    to be solely -- you are one person, but if you

14    are bringing the claims on behalf of more than

15    50, it's a covered class action, just as any

16    class plaintiff, any named class representative

17    is one person, but if they bring a class action

18    on behalf of more than 50, then SLUSA applies

19    and precludes the claims.

20                    JUDGE JACOBS:  Thank you.

21                    MR. KING:  Thank you, Your Honor.

22                    JUDGE JACOBS:  Welcome.

23                    MR. VELIE:  Good afternoon, Your

24    Honor.

25                    I'm Frank Velie, may it please the

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

82

1  Court, from Sullivan & Worcester.  I represent

2  UniCredit Bank Austria in Docket 5175.  And I'm

3  here to argue for another alternative holding

4  for why the case was properly dismissed, and

5  that is the Trustee lacks Article 3 standing.

6          This argument applies not just to

7  Bank Austria but to UniCredit S.p.A. and

8  Pioneer, our co-defendants in 5175, the HSBC

9  defendants in 5207, and the UBS defendants in

10  5051.

11          To set the stage.  What is it that

12  we are alleged to have done?  We are alleged --

13  these moving defendants are alleged -- I should

14  say these Appellee defendants are alleged to

15  have provided services to certain foreign feeder

16  funds, and that in that connection, we missed

17  the significance of certain red flags which are

18  alleged, and the result of that was that foreign

19  investors put their money into the feeder funds

20  and the feeder funds in turn put their money

21  into Madoff.

22          Now, as you might imagine, this has

23  created a number of disputes between the

24  investors into the foreign feeder funds and us.

25  We are being sued not only here where there was

Case: 11-5044   Document: 151-4   Page: 83   05/07/2013   929603   125

PICARD V. HSBC BANK, et.al.          ORAL ARGUMENT 11/21/12

83

1    a class action which was recently dismissed on

2    forum nonconvenience grounds, but there are

3    numerous, numerous actions against these

4    defendants all over Europe and elsewhere, and

5    those actions have not been stayed.  We are

6    defending those actions.

7              The Trustee is a stranger to this

8    dispute.  How is it that we are being sued here?

9    He claims, well, when we did this and this

10   resulted in money being invested in the feeder

11   funds, there was an influx of cash into BLMIS.

12   Well, how does that injure BLMIS?  It's hard to

13   see if Judge Rakoff couldn't see how that

14   created an injury.  And if you look at their tag

15   word, which is deepening insolvency, that

16   provides no help either.  If you take a look at

17   the cases collected -- quite nicely, I thought,

18   about Judge Kaplan in the Refco case -- where

19   you have money going into a person that might be

20   insolvent, it creates a debit and a credit, an

21   asset and a liability.  They're in perfect

22   balance.  That doesn't deepen the insolvency.

23             What deepened the insolvency?  The

24   subsequent act of Mr. Madoff who misapplied and

25   misappropriated the money.  He's a third -- he's

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

84

1   a foreigner to this dispute between us and -- if

2   there is a dispute -- between us and these

3   feeder fund people.

4                And, of course, there's harm to the

5   customers, Mr. Madoff's customers, but that harm

6   was caused solely by Mr. Madoff.  We put the

7   money in and if Mr. Madoff had not subsequently,

8   as I say, misapplied or misappropriated, it

9   would still be there along with their money.

10                JUDGE JACOBS:  Your standing

11   argument is starting to merge with the merits.

12                MR. VELIE:  Indeed that can happen.

13   There is a lot of causation which is baked into

14   standing.  The rule, accurately stated, I

15   think -- or at least for our purposes -- is --

16   the rule we need to follow is the one that's

17   articulated or at least endorsed by this court

18   in the St. Pierre case in 2000, and that is the

19   plaintiff must show harm to himself, fairly

20   traceable to the acts of the defendants, which

21   are complained of, and which is not the result

22   of an independent act of a third-party or here a

23   first party, Mr. Madoff.

24                So, inevitably, there's going to be

25   overlap between causation for whatever purposes

Case: 11-5044   Document: 151-4   Page: 85   05/07/2013   929603   125

PICARD V. HSBC BANK, et.al.          ORAL ARGUMENT 11/21/12

85

1   causation is used and for standing, but here

2   where there is no injury whatever and the

3   dispute is one -- if there is one -- about what

4   we did and whether it was right or wrong is

5   really a dispute between us and investors in the

6   feeder funds.  The Trustee is a stranger to

7   this, and for that reason we argue lacks

8   standing.

9           That's basically the argument I

10  want to make and it goes this way.  If there's

11  no injury, there's no standing.  If there's no

12  standing, there's no case or controversy, and,

13  therefore, no subject matter jurisdiction in

14  this court.

15          So this is an alternative ground

16  applicable to these defendants.

17          JUDGE JACOBS:  Thank you.

18          Any rebuttal?

19          MR. WARSHAVSKY:  A lot.  Thank you.

20          I want to start by discussing

21  Redington and maybe just -- well, actually I'll

22  start by -- Redington is the law of this

23  circuit.  A district judge is not allowed to

24  overturn the law of this circuit.  Ultimately

25  when the defendants say, a-ha, it was vacated,

**PICARD V. HSBC BANK, et.al.**            **ORAL ARGUMENT 11/21/12**

86

1    the first time the argument that Redington was

2    vacated was ever made was to this court, and it

3    was by virtue of a copy of an order which we

4    cannot find in the file.

5              We first saw this when we got the

6    defendants' briefs.  It wasn't argued below, it

7    wasn't argued in BDO.   Everybody until these

8    briefs were filed in this case understood

9    Redington to be the law of this circuit, and

10   that includes this court.

11             In the BDO case -- and we cite to

12   it -- it's very clear.  Now Justice Sotomayor

13   said Redington is the law of this circuit.  Even

14   if --

15             JUDGE JACOBS:  Well, that was

16   assumed.

17             MR. WARSHAVSKY:  I'm sorry?

18             JUDGE JACOBS:  I think she assumed

19   it to be in that case.

20             MR. WARSHAVSKY:  Well, that's

21   right, but what else would she -- I guess the

22   question is, Your Honor, what else would she

23   look to?

24             JUDGE JACOBS:  It's odd to say of a

25   current case that it's assumed to be the law of

Case: 11-5044   Document: 151-4   Page: 87   05/07/2013   929603   125

PICARD V. HSBC BANK, et.al.          ORAL ARGUMENT 11/21/12

87

1    the circuit if it's the law of the circuit.

2    There's a controversy about it, I mean, it's

3    impaired, it's -- it has dubious aspects to it

4    at this stage.

5             MR. WARSHAVSKY:  Well, I guess the

6    first point I was speaking to is that it was

7    always understood to be the law of the circuit

8    and whether or not it was questioned -- even BDO

9    said it could only be reversed by the Supreme

10   Court or by a full -- by a panel of this court,

11   and that's how it was understood.  We've argued

12   to you why we think it is good law, nonetheless,

13   but I did want to start there.

14             I want to address then

15   Mr. Savarese's argument about SIPA being only a

16   payment scheme and the Fund of Customer Property

17   only being a payment scheme.  What I would point

18   to is the statue itself in 78fff-2(c)(1).  And

19   that is the provision of what happens when the

20   Fund of Customer Property is not replenished but

21   there's money in the general estate.  And what

22   the statute says is that at that point a

23   customer claim -- the customer's net equity

24   claim is treated just like a general creditor.

25             If SIPA is only a priority scheme,

**PICARD V. HSBC BANK, et.al.**                 **ORAL ARGUMENT 11/21/12**

88

1    why would a customer's net equity claim be

2    treated similar to all the claims of a creditor?

3    If in this case no money could be brought back

4    into the estate -- let's remember, in this case,

5    when this case first broke, people weren't

6    expecting the Trustee to be able to bring as

7    much money -- very much money back in at all,

8    and it's questionable whether the Trustee will

9    be able to bring all the money back in, but if

10   Madoff was running another business, if there

11   was another general estate, all these customers

12   would participate just like general creditors.

13   The reason again, I would submit to Your Honors,

14   goes back to the definition of customer

15   property.  What is customer property?  It's

16   property that never belonged to the debtor.

17              Redington -- we say in our papers

18   that Redington is a judicial expression of the

19   law, because, as you point out, the statute

20   doesn't say bailment, but a broker/dealer and a

21   SIPA Trustee and the debtor don't have an

22   ownership interest in customer property, they

23   never did.  All any of those entities have is a

24   right of possession and they own it -- I'm sorry

25   -- and the property itself is always owned by

PICARD V. HSBC BANK, et.al.          ORAL ARGUMENT 11/21/12

89

1    the customers, but, again, it's -- the Fund of

2    Customer Property is far more than a payment

3    scheme.

4              I'd also -- Wagoner was touched

5    upon, but I'd also like to discuss why Wagoner

6    would be inappropriate in the context of a

7    bailment like this.  And it's not an overarching

8    policy and it actually goes to the definition of

9    customer property and the definition of

10   customer.

11             The Kirschner case, the New York

12   Court of Appeals was very clear.  It said, look,

13   there could always be good policy ground, people

14   could always argue policy for why one set of

15   creditors should profit over another set of

16   creditors.  We don't have that here.

17             Again, we go to the definition of

18   customer.  The definition of customer excludes

19   creditors, it excludes shareholders and it goes

20   a step further.  It excludes anybody who's a

21   capital investor even if they're clean, even if

22   there was no fraud here, even if Wagoner never

23   claim into play, none of those entities could

24   ever recover from the Fund of Customer Property.

25             That's why I think Wagoner and in

1   pari delicto should never apply to the Fund of

2   Customer Property or Trustee seeking to recover

3   money for the Fund of Customer Property.

4            JUDGE CARNEY:  Could you also

5   address your adversaries' argument about the

6   definition of customer property that's in the

7   statute that, as I understood he was saying, it

8   didn't include choses in action, it's just

9   securities or cash, therefore, that you don't

10  have control over their claims?

11           MR. WARSHAVSKY:  Well, customer

12  property is -- the definition is whatever was

13  supposed to be segregated and anything that

14  actually was segregated.  It includes anything

15  that the debtor wrongfully converted and put

16  into the debtor's property.  It also includes

17  anything that the Trustee can bring back into

18  the estate.

19           So customer property always

20  includes, for instance, the avoidance actions of

21  the Trustee.  If the Trustee sees that money --

22  that one customer's money has gone to a second

23  customer, the Trustee can always bring an

24  avoidance action to try and bring that money

25  back into the estate.  If the Trustee wins the

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

91

1   case, wins the avoidance action, that money

2   that's brought back in doesn't go to the general

3   estate, it goes to the customer property fund.

4   So that's the definition of customer property.

5            My adversary is right, there is no

6   definition -- there's nothing in the definition

7   of customer property that says, a-ha, any

8   third-party claim could be brought, obviously,

9   but it does bring in any property of the debtor,

10   and to the extent a debtor has a third-party

11   claim, certainly that would be included as

12   property of the debtor which could be brought

13   back into the estate.

14            In that regard, I guess as long as

15   we're talking about third-party claims, I'm

16   going to skip to Mr. King's argument.  Mr. King

17   said, well, SIPA doesn't allow for state law

18   claims.  No one here has ever debated that the

19   Trustee has a right to bring causes of action

20   under the New York Debtor Creditor Law, no one

21   has ever questioned that.

22            In point of fact, if Madoff had had

23   innocent insiders, no one would have questioned

24   whether or not he could -- there might be

25   exceptions to in pari delicto to bring actions

**PICARD V. HSBC BANK, et.al.**            **ORAL ARGUMENT 11/21/12**

92

1    under the Bankruptcy Code because he invested

2    with those powers.

3              What we've done here is we've said

4    any defense that exists under Chapter 11 is

5    going to be imported into SIPA.  That's

6    really what is -- SIPA statute doesn't speak to

7    any types of causes of action, but I'll take

8    that a step further, which is, a typical

9    bankruptcy trustee can, regardless of in pari

10   delicto, could bring a cause of action for

11   contribution.  Why wouldn't a SIPA Trustee be

12   able to bring that -- why would a SIPA Trustee

13   now have less rights than a bankruptcy trustee?

14   That makes no sense.  That can't be what

15   customer protection means.

16              I want to go to -- I'm sorry to

17   speak so quickly.

18              You had asked for a cite before,

19   Your Honor.  We had cited in our papers the

20   Klinger case, which is 41 N.Y.2d 362, which

21   cites McCabe v. Queensboro, which is 22 N.Y.2d

22   204, two cases, I believe both from the New York

23   Court of Appeals -- I assume from the cite

24   they're both from the New York Court of

25   Appeals -- that held that a defendant has a

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

93

1   right to bring a claim of contribution prior to

2   recovery.

3              I want to touch briefly on the

4   arguments by Mr. Moloney and Mr. Velie, and they

5   focus on facts and facts outside of this case.

6              The Trustee absolutely has brought

7   causes of action that he alleges harm the entire

8   estate.  For the purposes of this action, those

9   have to be deemed true.  To the extent we're

10  talking about causation, I gave one example

11  before, unfortunately, my time is limited, but

12  if you were to read our complaints, I think we

13  articulate exactly why.  And just if I could

14  maybe give a very simple hypothetical, which is,

15  if you were a customer of Madoff and Madoff was

16  on the precipice of collapse in 2001, 2003,

17  various times, and new money came in, the entire

18  Ponzi scheme is prolonged.  You don't have to

19  know why it's prolonged, you don't have to know

20  the identity of those that aided and abetted the

21  scheme to have a cause of action for damages.

22  Rather, you're damaged by the fact of the

23  prolonging of the scheme.

24              To that end, any -- I don't think

25  anyone would question that anybody who helped

Case: 11-5044   Document: 151-4   Page: 94   05/07/2013   929603   125

PICARD V. HSBC BANK, et.al.                    ORAL ARGUMENT 11/21/12

94

1     Madoff inside, people who have confessed to

2     helping Madoff and are being sentenced, or

3     perhaps in jail already, certainly they were

4     strangers to customers, certainly nobody knew

5     their names ahead of time, certainly there was

6     no relationship ahead of time.

7                    The way they were injured and the

8     reason they could proceed is because there was

9     an intentional tort and they were damaged.  They

10    don't need to show a relationship.  All they

11    need to show is that they were injured by that

12    defendant's conduct.

13                   I want to touch again -- I'm sorry

14    to hop all over.  You gave a lawnmower example

15    earlier about what happens to a lawnmower in a

16    bailment.  The first thing I'd say is, to

17    counter some of the arguments by the defendants

18    is, no matter what in that example, the

19    lawnmower was not an juridical entity.  That's

20    not the touchstone for whether a bailment exists

21    or whether a bailee could bring an action or the

22    bailor, frankly, for damage to the bailed

23    property.

24                   The difference is in a case like

25    this, if you put your lawnmower with Madoff, you

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

95

1    would not share with creditors, you would not be

2    treated pro rata with creditors.  You would get

3    your property back.  And if we had to bring a

4    separate action, if the Trustee brought a

5    separate action on your behalf, it would be to

6    get back that property.

7                   I see my time is up.  If I could

8    address St. Paul --

9                   JUDGE JACOBS:  Go ahead.

10                  MR. WARSHAVSKY:  Okay.  Now I'm

11   sorry for speaking so quickly.

12                  JUDGE JACOBS:  Well, it's mainly a

13   problem for our court reporter.  Don't speed up.

14                  MR. WARSHAVSKY:  I'll try not to.

15                  When we talk about St. Paul -- and

16   you had asked earlier about who owns the

17   claim -- and what St. Paul said -- and I don't

18   think what Appellees disagree -- St. Paul said

19   that if any creditor could bring the claim, it

20   becomes property of the estate, and that's not

21   the only case to hold that and it's for good

22   cause, because the whole purpose of the

23   Bankruptcy Code or the SIPA statute, for that

24   matter, is to avoid a rush to the courthouse, to

25   avoid various claims, and, frankly, it makes a

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

96

1     lot of sense from a judicial economy standpoint

2     not to have 4900 different plaintiffs suing

3     various defendants because of the same common

4     injury.  It also is in keeping with a pro rata

5     distribution.

6              It's why -- and Your Honor had

7     addressed the automatic stay in the context of

8     St. Paul.  In fact, we brought claims in that

9     regard here.  I would point Your Honors to the

10    decision in Fox v. Picard, we cited it in our

11    papers, but there what the court held is that

12    St. Paul has broader implications than just a

13    debtor's alter ego.

14              St. Paul is -- the reason St. Paul

15    comes into play is because the -- you use the

16    term a general versus particularized claim.

17              Every --

18              JUDGE JACOBS:  I'm not sure what it

19    means but -- in general.

20              MR. WARSHAVSKY:  And I think St.

21    Paul or Fox and other cases that have

22    interpreted St. Paul speak to that, which is

23    that at the moment of insolvency, every Madoff

24    customer suffered the same injury.  They didn't

25    suffer it to the same degree, but they suffered

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

97

1    by the virtue of the same injury because of the

2    insolvency.

3              To the extent they have claims, for

4    instance, against Bernard Madoff or, in a case

5    of St. Paul, against the debtor's alter ego,

6    well, everybody has been damaged equally, and

7    that's really the touchstone of the Trustee's

8    claims here, is that anybody -- these defendants

9    aren't the only defendants where the Trustee has

10   made these allegations.  He's also made

11   allegations against the accountants, against

12   others who helped propagate this scheme.

13             And the point goes back to my

14   position with you earlier, Your Honor, which is

15   that anybody who suffered by their -- by virtue

16   of this fraud suffered -- their suffering was

17   increased each time the scheme was prolonged,

18   each time the scheme was propagated.

19             And our position is that those that

20   helped propagate the scheme, those that we have

21   accused of aiding and abetting the fraud and

22   helping to propagate it, should pay their fair

23   share.

24             I'd say also, frankly, when we're

25   discussing Wagoner and its progeny as well, I

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

98

1    spoke about customer.  I also harken back to

2    Your Honor's Net Equity decision here.

3              Here what we're talking about is

4    bringing back investors their principal.  We're

5    not talking -- we keep talking about damages.  I

6    know that's the only way to think about it, but

7    we're not talking about expectation damages or

8    anything.  All we're talking about here is

9    filling the Fund of Customer Property, getting

10   back each investor, some who were 30, 40 years

11   in Madoff back to sea level.  That's all we're

12   doing.

13             Thank you.  Thank you for the extra

14   time.

15             MR. LA ROSA:  I just wanted to make

16   a couple of additional points, Your Honors.  In

17   thinking about bailment, I just encourage you,

18   as I said at the beginning of my presentation,

19   to go back and look at the really very simple

20   elements that are necessary to create a bailment

21   applied under the law.  It's lawful possession

22   and a duty to account for the bailed property as

23   the property of another.  Both of those elements

24   are pretty clearly satisfied here.  You've got

25   lawful possession per 15c3-3 and you've got a

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

99

1   statute -- first a regulatory and then a

2   statutory duty to account for this as property

3   to another.  That's, I think, clear on the basis

4   of both the regulation and the statute.

5            There's a lot of talk about the

6   real bailment being customer named securities,

7   not customer property.  And that is really --

8            JUDGE JACOBS:  But there's

9   something to that --

10           MR. LA ROSA:  Well -- go ahead.

11           JUDGE JACOBS:  -- because if a

12   raincoat is dropped off at the dry cleaner, you

13   expect the dry cleaner to handle and clean the

14   raincoat.  You don't expect the dry cleaner to

15   wear it.

16           MR. LA ROSA:  Well, that's true but

17   --

18           JUDGE JACOBS:  And if you deposit

19   securities with a broker, with a broker/dealer,

20   they can use it for various purposes.

21           MR. LA ROSA:  Well, but they always

22   have to have like securities in their possession

23   or control reserved for you, right?  I mean,

24   they can't -- yes, they can use the particular

25   securities -- it just really points out the

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

100

1    distinction between non-fungible and fungible

2    property.  Customer name security is a security

3    that's non-fungible, it's registered in your

4    name particularly.

5                    A street name security which is

6    held in the name of the broker/dealer but can be

7    used in -- you know, as long as the

8    broker/dealer has -- if the broker/dealer owes

9    50,000 shares of IBM to it customers, so long as

10   it has at least 50,000 shares of IBM available

11   for delivery to its customers --

12                    JUDGE JACOBS:  So that's going back

13   to the grain silo?

14                    MR. LA ROSA:  Yes, it's --

15   effectively it's just the application of

16   bailment principles to fungible property, which

17   is what street name securities are, they're

18   securities that are held in the name of the

19   broker/dealer for the benefit of the

20   broker/dealer's customer.  Typically, you know,

21   broker/dealer would have an omnibus account at a

22   clearing corporation in which it would hold all

23   of the securities that it's holding for

24   customers and then it would allocate those

25   securities to individual customers on its own

**PICARD V. HSBC BANK, et.al.**          **ORAL ARGUMENT 11/21/12**

101

1    books and records.

2              But the fact -- I mean, if your --

3    the raincoat example is a little difficult

4    because it may be a very special raincoat to

5    you, but, I mean, if it were a raincoat -- if

6    you didn't care particularly about the make or,

7    what have you, of that raincoat, just so long as

8    the cleaners gives you back an identical

9    raincoat, one that's functionally equivalent,

10   you wouldn't care.  It would be --

11             JUDGE JACOBS:  Well, I'm not sure

12   about that.

13             MR. LA ROSA:  Well, it may be

14   non-fungible.  The point is that the statute

15   recognizes a distinction that's implicit in

16   bailment law between non-fungible and fungible

17   property.  The fact that it has different rules

18   applying to fungible property doesn't mean that

19   a bailment isn't created.  It just means that

20   it's a bailment relating to non-fungible -- to

21   fungible property and that the rules are

22   different there.

23             With regard to Wagoner, I don't

24   know that the case was even mentioned, but we've

25   relied very heavily on the Bateman Eichler

PICARD V. HSBC BANK, et.al.                    ORAL ARGUMENT 11/21/12

102

1    doctrine.

2              Wagoner is based on a -- is a

3    transposition of the state law defense of in

4    pari delicto to federal standing, but

5    effectively it is an adoption of that defense.

6    There's no distinction that we can discern

7    between the contours of the federal standing

8    doctrine under Wagoner and the state law defense

9    of in pari delicto.

10             There is a line of cases decided by

11   the Supreme Court starting with Bateman Eichler,

12   to the effect that when a state law defense, an

13   equitable defense like in pari delicto, would

14   interfere or frustrate the goals or purposes of

15   the federal statutory or regulatory scheme, then

16   it's not applicable, it's displaced.  We think

17   that principle is applicable here.

18             The primary, if not the exclusive

19   purpose of Rule 15c3-3 --

20             JUDGE CARNEY:  Excuse me.  Would

21   that also apply -- would that argument also

22   apply to a regular Chapter 7 bankruptcy trustee

23   or just special to SIPA?

24             MR. LA ROSA:  Well, I mean,

25   depending upon the context it could, but there

**PICARD V. HSBC BANK, et.al.**                **ORAL ARGUMENT 11/21/12**

103

1    are particular purposes that Rule 15c3-3 and

2    SIPA have that would be deeply frustrated by the

3    application of in pari delicto.  There's a

4    bailment that's created by those provisions.

5    That bailment enables the Trustee to recover

6    customer property.  Look, the over -- the

7    principal, if not the only purpose really of 3-3

8    and SIPA is to ensure that customers get back

9    the property that they've entrusted to a

10   broker/dealer, that the broker properly performs

11   its custodial function and if it doesn't, that

12   customers don't suffer because there's been a

13   breakdown in that custodial function.

14           If you -- if you say that a Trustee

15   who had no part in the wrongdoing of a

16   broker/dealer is still tainted by the

17   broker/dealer's participation in that wrongdoing

18   and, therefore, can't recover as a result of it,

19   you would be prohibiting the Trustee from

20   recovering property that would be ultimately

21   allocated and distributed to customers for their

22   benefit.  It would frustrate the primary -- it

23   is called the Securities Investor Protection

24   Act.  It would frustrate the primary goal of the

25   statute and the regulation to apply the

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

104

1    doctrine, and so we think Bateman Eichler

2    displaces Wagoner in this context.

3              JUDGE JACOBS:  Thank you.

4              MR. LA ROSA:  Thank you.

5              JUDGE JACOBS:  Thank you all.

6              The Court is grateful to counsel

7    for expert argument on all sides.  We will

8    reserve decision.

9

10             (Time noted: 12:40 )

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>C E R T I F I C A T E</u>

I, NANCY MAHONEY, a Certified Court Reporter and Notary Public of the States of New Jersey and New York, do hereby certify that the foregoing is a true and accurate transcript of the proceedings as taken stenographically by and before me at the time, place, and on the date hereinbefore set forth.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any party in this action and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the event nor outcome of this action.

_____
Notary Public of the State of New York
Certificate No. XI00945

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

[Page 1]

**A**

**abet** 59:24,24 60:3
**abetted** 60:2,11
  93:20
**abetting** 24:8,11,12
  59:23 75:20 97:21
**ability** 52:16
**able** 16:11 46:8 88:6
  88:9 92:12
**Abram** 78:14
**absent** 65:13
**absolutely** 49:11 66:5
  67:7 93:6
**accede** 18:24 25:16
**Accepting** 39:6
**Access** 4:8
**account** 13:14 16:25
  29:4,12,19 30:3,14
  42:8 50:21 52:8
  98:22 99:2 100:21
**accountant** 64:8 65:7
**accountants** 60:20
  97:11
**accounts** 41:25
**accuracy** 67:19
**accurate** 42:3 105:6
**accurately** 84:14
**accused** 25:22 97:21
**acknowledge** 25:14
**acquire** 34:6
**acquired** 29:1,1,24
**act** 9:22,25 10:8,10
  12:3 13:5 18:1
  44:17 73:15 74:3
  75:3 83:24 84:22
  103:24
**acting** 52:23,23 78:13
**action** 14:1,6 23:11
  23:13 24:1,5,7,8
  27:15 28:1 44:16
  64:6,10,19,23 65:21
  66:16 80:16 81:15
  81:17 83:1 90:8,24
  91:1,19 92:7,10
  93:7,8,21 94:21
  95:4,5 105:12,16

**actions** 16:11 22:25
  28:22 38:20 64:21
  83:3,5,6 90:20
  91:25
**active** 43:22
**activities** 50:19
**acts** 84:20
**addition** 22:9 74:15
**additional** 56:2,18
  57:12 98:16
**Additionally** 55:18
**address** 7:20 19:11
  48:18 67:5 87:14
  90:5 95:8
**addressed** 28:12
  62:12 63:2 79:7
  96:7
**adherence** 45:17
**adjustment** 6:11
**administrative** 53:16
  55:19,22
**administrator** 54:1
**adopting** 69:11
**adoption** 102:5
**advance** 35:24 58:5
**advancing** 55:2 56:1
**adversaries** 39:9 90:5
**adversary** 91:5
**advisor** 70:3
**Advisors** 4:8
**affirmance** 38:4 72:8
  79:6,9
**affirmed** 15:23
**affirms** 65:14
**afternoon** 81:23
**AG** 2:7 4:4
**agent** 26:14
**aggregate** 47:18
**agree** 20:9,10 24:14
  42:12 48:10
**ahead** 26:11 35:8
  55:21 67:8 94:5,6
  95:9 99:10
**aid** 59:24,24 60:3
**aided** 60:2,9,10 93:20
**aiding** 24:8,10,11

  59:23 75:20 97:21
**aims** 75:20
**Airlines** 73:3,13 74:1
**al** 1:14,22 2:7,14 3:15
**Alain** 3:23 4:13
**allegations** 97:10,11
**allege** 79:20
**alleged** 24:7 80:9
  82:12,12,13,14,18
**allegedly** 73:19
**alleges** 93:7
**allocable** 35:18
**allocate** 36:5 100:24
**allocated** 33:5,14
  103:21
**allocates** 59:13
**allocation** 37:17,25
**allow** 65:20 91:17
**allowable** 57:2
**allowed** 85:23
**allows** 14:4,7,8 50:14
  50:17,17,18
**alter** 22:8,10 23:6
  46:6 96:13 97:5
**alternative** 3:19 5:11
  72:8 79:6 82:3
  85:15
**amendment** 34:21
  63:20,24 70:20
**amount** 34:8 35:10
  61:24
**amounts** 47:5
**analysis** 74:18
**analyzed** 73:9
**animated** 60:16
**announced** 40:19
**answer** 12:6 21:16
  23:3 24:18,22 46:21
  53:13 54:21
**answering** 49:5
**answers** 24:24 54:17
  54:20
**ANTHONY** 4:7
**Anwar** 80:2
**anybody** 33:11 36:7
  89:20 93:25 97:8,15

**apart** 68:15
**appeal** 74:17
**appeals** 1:1 5:5 27:25
  89:12 92:23,25
**Appellant** 8:19
**Appellee** 3:8 37:24
  82:14
**Appellees** 95:18
**applicable** 71:11 76:2
  85:16 102:16,17
**application** 76:5
  77:17 100:15 103:3
**applied** 73:25 74:18
  98:21
**applies** 75:13 81:18
  82:6
**apply** 29:24 40:20
  59:17 72:23 76:8,19
  90:1 102:21,22
  103:25
**applying** 47:15 75:1
  101:18
**approaching** 6:10
**appropriate** 32:19
  73:4 74:12
**arbitration** 77:22,24
  78:4
**arguably** 67:10
**argue** 72:19 82:3
  85:7 89:14
**argued** 72:9 79:7
  86:6,7 87:11
**arguing** 39:9 45:3
  72:20
**argument** 1:5 5:4
  21:10 38:23 39:4
  41:14 74:7 82:6
  84:11 85:9 86:1
  87:15 90:5 91:16
  102:21 104:7
**arguments** 7:21 93:4
  94:17
**arises** 11:3 22:25
**arose** 17:16 22:13
**Arps** 3:17 62:11
**art** 29:10

Case: 11-5044    Document: 151-4    Page: 107    05/07/2013    929603    125

PICARD V. HSBC BANK, et.al.                    ORAL ARGUMENT 11/21/12

[Page 2]

**Article** 82:5
**articulate** 93:13
**articulated** 58:22
  84:17
**aside** 71:12,20
**asked** 44:24 46:9
  49:5 53:14 92:18
  95:16
**asking** 36:23 39:19
**aspects** 20:8 69:10
  87:3
**assembling** 20:5
**assert** 17:14 33:4,13
  45:21 64:15 75:10
**assertable** 15:19
**asserted** 23:11,13
  43:19 59:20
**asserting** 15:18
**assessed** 73:9
**asset** 83:21
**assets** 25:25 26:22
  53:6,7
**assume** 54:8 92:23
**assumed** 67:15 86:16
  86:18,25
**attention** 70:25 71:4
**attorney** 105:11,13
**Austria** 4:4 5:15,22
  7:18 82:2,7
**authority** 80:3
**automatic** 37:9 48:3
  96:7
**available** 15:14 50:19
  100:10
**Avenue** 3:21 4:6
**avoid** 16:24,25 95:24
  95:25
**avoidance** 14:6 16:11
  90:20,24 91:1
**award** 78:4
**aware** 60:17 68:13
  71:14
**a-ha** 85:25 91:7
**a.m** 2:17

——————————
                **B**

**B** 2:20 4:4
**back** 13:20 14:6,11
  14:16 16:10 17:4
  20:15 21:8 23:19
  27:14 40:22 46:3
  49:24,25 50:22 52:8
  52:9 54:10 55:25
  62:2 64:23 68:20
  88:3,7,9,14 90:17
  90:25 91:2,13 95:3
  95:6 97:13 98:1,4
  98:10,11,19 100:12
  101:8 103:8
**background** 12:19
**bail** 31:16
**bailed** 19:3 31:20
  94:22 98:22
**bailee** 10:24 11:25
  28:20,22 29:3 31:17
  44:5,10 52:23 64:14
  94:21
**bailees** 41:5
**bailment** 11:1,3,7,8
  11:10,17,19,19,24
  12:4,7,21 18:22,24
  20:9 21:6 28:11,13
  28:14,16,18,24
  30:21 31:7,11,12,14
  31:15,18,20 32:11
  32:20 41:5 43:17
  50:10,13,25,25 51:4
  51:12,23 52:11,14
  52:14 70:7,8,9,10
  70:11,11 88:20 89:7
  94:16,20 98:17,20
  99:6 100:16 101:16
  101:19,20 103:4,5
**bailor** 41:14 94:22
**bailors** 31:15,16,22
  41:4
**baked** 84:13
**Baker** 3:6 8:18
**balance** 83:22
**bank** 1:14 2:14 4:4
  5:15,22 7:18 54:8
  54:10 82:2,7

**bankrupt** 39:2,8
  42:10 45:22
**bankruptcy** 9:16,17
  9:21,22 10:2 12:18
  12:19 13:1,24 17:6
  18:21,23 19:7,8,22
  22:13 26:16 37:13
  38:16,21 39:7,17
  40:7,13,17,24 45:6
  45:19 77:20 78:15
  92:1,9,13 95:23
  102:22
**based** 34:7,8 78:16
  102:2
**basic** 21:6
**basically** 22:19 26:14
  39:18 85:9
**basis** 21:4 67:17,21
  99:3
**Bateman** 101:25
  102:11 104:1
**BDO** 67:3,11 86:7,11
  87:8
**beast** 15:24
**beginning** 98:18
**begun** 38:11
**behalf** 6:16 16:7 19:1
  19:3,9 28:8 29:13
  38:17 45:20 48:23
  51:2 59:5 64:7 72:4
  73:6 78:1,9 80:14
  80:18,21 81:1,14,18
  95:5
**belief** 23:18
**believe** 40:1 43:5
  92:22
**belong** 47:14
**belonged** 21:21 46:7
  88:16
**belonging** 47:19
**belongs** 13:10
**BENDISH** 2:24
**benefit** 5:3 11:16
  35:2 71:13 80:20
  100:19 103:22
**Bernard** 1:3,9,17 2:2

**2:**9 5:9 17:25 24:6
  24:13,16,19 25:15
  26:4 76:15 97:4
**Bernie** 43:23 60:12
**best** 69:1
**betrays** 68:21
**better** 71:17
**beyond** 34:13 57:12
  65:21
**big** 34:20 49:7,8 50:9
  52:25 53:1 54:10
**bigger** 55:12
**billion** 59:10,12
  61:11
**billions** 26:16
**binding** 62:23 65:23
  67:25 68:16
**bit** 20:19
**black** 44:3
**BLMIS** 23:16 25:16
  53:21 57:16,17,19
  57:21 58:4,10 83:11
  83:12
**blows** 32:3
**blue** 70:8
**BMIS** 43:22 44:9
  46:25 47:9
**body** 42:8
**books** 32:7 60:21,22
  101:1
**breach** 24:11 75:9
  78:16
**breakdown** 103:13
**breathes** 16:22
**BRETT** 4:12
**brief** 56:25 79:11
**briefly** 44:13 62:13
  79:5 93:3
**briefs** 28:13 86:6,8
**bring** 8:24 13:20,25
  14:10 16:10 17:20
  18:1,2 27:13 28:21
  38:25 41:11 42:2
  44:16 47:14,17,20
  47:25 48:7 51:1
  56:3 58:15 59:4

Case: 11-5044    Document: 151-4    Page: 108    05/07/2013    929603    125

PICARD V. HSBC BANK, et.al.                    ORAL ARGUMENT 11/21/12

[Page 3]

64:15 65:9 81:17
88:6,9 90:17,23,24
91:9,19,25 92:10,12
93:1 94:21 95:3,19
**bringing** 14:5,6
16:20 19:1,3 37:9
60:24 80:13,25
81:11,12,14 98:4
**brings** 19:9 72:22
**broad** 41:10
**broadens** 13:12
**broader** 45:7 58:22
96:12
**broadly** 79:18
**Broadway** 4:3
**broke** 41:17 88:5
**broker** 11:13,14,22
12:12 29:22 30:5
64:7,9 71:15 99:19
103:10
**brokerage** 9:23 43:20
46:25 47:7 76:23
**broker's** 29:23,24
30:2 41:24
**broker/dealer** 10:10
10:11,12,17 12:15
13:7,7 28:21 29:7
29:11,13,14,16
30:14,16,24 31:2
49:23 50:15 51:5,16
51:18,19 52:5,17,18
52:22 55:15 57:25
58:4,6 61:7,9 62:4
77:4,21,22 78:8,20
88:20 99:19 100:6,8
100:8,19,21 103:10
103:16
**broker/dealers** 58:2
61:14
**broker/dealer's**
10:14 100:20
103:17
**BROMBERG** 4:11
**Brothers** 20:13
**brought** 8:25 14:16
17:19 21:19,24

37:10 38:21,23 65:7
74:13 77:21 80:18
80:21 88:3 91:2,8
91:12 93:6 95:4
96:8
**bullet** 12:5
**bunch** 31:25
**business** 50:16 88:10
**buy** 52:5
**buying** 80:12

---

**C**

**C** 3:1 4:1 105:1,1
**calculation** 77:9
**call** 7:8 14:22 19:17
27:17 70:25 71:3
81:7
**called** 14:20 20:4
41:9 65:12 77:18
80:1 103:23
**calls** 81:3,4
**capacities** 4:13
**capital** 15:8 89:21
**Caplin** 6:20 38:11
39:17 42:20 45:3,9
45:17 47:23
**care** 101:6,10
**Carney** 2:22 11:23
12:14 20:3 21:5
22:6 23:4,8 26:11
26:25 28:5 40:2
42:3,21 43:1 57:23
61:1,4 62:24 67:1
90:4 102:20
**carries** 28:18
**carry** 54:1
**carrying** 52:19
**case** 6:19 7:10 9:10
13:15,22 14:19 16:4
16:8,15,16,24 17:7
17:9,9,11 18:11
19:25 20:11,21
23:14 27:14,21,24
29:2 36:18 43:13,18
43:21 45:9,9 46:3,4
46:23 47:21 49:17

49:19,19 53:4 54:18
54:21,22 55:8,9
58:25 59:3 60:21
62:14,16 63:13 64:5
64:17 65:15 66:4,20
66:23 67:19 68:6,13
71:17 77:18 79:22
79:23 80:1 81:5
82:4 83:18 84:18
85:12 86:8,11,19,25
88:3,4,5 89:11 91:1
92:20 93:5 94:24
95:21 97:4 101:24
**cases** 5:8 6:20 9:6
14:22 20:20 25:3,5
27:13 31:24 32:16
38:8 46:17 47:16,25
48:1,5 51:7 65:10
66:16 67:9 83:17
92:22 96:21 102:10
**cash** 10:18 21:1,2
26:1 41:23 50:15
52:7 71:7,9 78:18
83:11 90:9
**catchall** 71:9
**categories** 71:8
**causation** 84:13,25
85:1 93:10
**cause** 14:1 64:10
66:15 68:6 92:10
93:21 95:22
**caused** 84:6
**causes** 23:11,13 24:1
24:5,7,8 44:16
91:19 92:7 93:7
**CCR/RPR** 2:23
**Ceremonial** 2:19
**certain** 27:23 35:10
61:24 63:19 82:15
82:17
**certainly** 23:15 33:12
34:10 91:11 94:3,4
94:5
**Certificate** 105:19
**Certified** 105:3
**certify** 105:5,10

**Chandler** 9:24
**change** 7:7
**chapter** 19:8 40:9
92:4 102:22
**characteristics** 42:5
**characterizes** 65:18
**charge** 26:8
**Chase** 1:22 3:15 8:12
**Chief** 2:21
**choose** 47:22,24
**chosen** 48:7
**choses** 90:8
**CHRISTOPHER** 3:4
**circuit** 1:1 85:23,24
86:9,13 87:1,1,7
**circumstance** 50:13
53:11 73:21,23
**citation** 9:6
**cite** 86:11 92:18,23
**cited** 20:20,21 27:13
45:18 56:24 77:19
92:19 96:10
**cites** 92:21
**claim** 17:20,20 21:12
21:13,19,21,24 22:8
22:10,25 23:6,23,25
24:15 25:20 33:8,10
33:11,12 35:13 36:9
36:10 39:20,21
41:18 45:24 46:6,10
46:11,22,25 47:18
50:23 55:15,22 56:3
56:3,4,8 58:7,9,12
58:15 59:4 69:25
72:21 73:14,18
74:13 75:4,8,10,11
75:24,25 77:15,16
77:22,25 78:4,5,7
78:10,13,13,24
81:11,12 87:23,24
88:1 89:23 91:8,11
93:1 95:17,19 96:16
**claimant** 73:11
**claimants** 75:22
**claims** 8:25 16:20,23
17:14,16 19:1,3,9

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

19:24 21:11 22:15 23:15 25:12,13,17 25:21,22 26:15,20 26:24 27:21 33:2 34:9,9 38:25 41:11 45:21 47:1,12,13,19 48:7 49:15 53:12 55:15,17 57:1,3,17 57:18 58:5 59:19 60:25 64:16 65:6,6 69:23 71:16 72:14 75:19,20,21 76:16 77:6,7,8 78:16,21 79:19 80:6,13,17,25 81:14,19 83:9 88:2 90:10 91:15,18 95:25 96:8 97:3,8

**clashes** 70:19

**class** 31:4,5 80:16 81:15,16,16,17 83:1

**Claudine** 4:8

**clean** 18:4 89:21 99:13

**cleaner** 99:12,13,14

**cleaners** 101:8

**clear** 25:7 27:15,25 30:13 57:7,9 67:14 76:25 86:12 89:12 99:3

**clearing** 100:22

**clearly** 12:6 22:8 98:24

**CLEARY** 3:10

**clerk** 64:25

**client** 53:14 59:20

**client's** 27:7

**code** 9:17 10:2 13:2 17:22 19:7 37:13 39:17 40:7,14,24 92:1 95:23

**codification** 63:22

**codified** 34:22 63:20 63:21

**collapse** 93:16

**colleague** 24:25

**colleagues** 66:24 71:3

**collect** 26:13 27:10 33:21,25 36:15

**collected** 42:6 83:17

**collecting** 28:2

**collective** 31:15,18

**collectively** 31:16,19 66:2,20

**collects** 54:13

**come** 7:14 12:5 27:14 31:24 32:22 35:3 41:3 55:16,21 60:7

**comes** 10:12 13:6 14:24 32:3 36:4 64:23 69:4 96:15

**coming** 18:25 40:22 67:24

**commission** 41:11 62:11

**committed** 56:13

**commodities** 31:24

**common** 7:11 11:4 16:21 21:20 22:15 22:19 23:11,22,23 23:25 28:17 32:23 34:14,24 52:13 65:5 65:6 72:14 74:6 96:3

**commonly** 31:23

**community** 62:4

**company** 41:17 60:19 60:20

**company's** 22:10

**comparison** 59:8

**compatible** 37:3

**compel** 38:4

**compensation** 35:11

**complained** 84:21

**complaints** 24:10 93:12

**completely** 46:4

**compliance** 71:11

**complicated** 5:19

**comply** 30:6

**concentrate** 38:2

**concept** 45:5

**concerned** 68:12

**concerning** 38:3

**concluded** 45:18

**conclusion** 47:17 66:8

**conclusions** 69:12

**concurrent** 22:3

**conditions** 29:8

**conduct** 94:12

**conducted** 40:11,13

**confer** 6:4

**confessed** 94:1

**confidence** 26:2

**conforms** 32:10

**confronted** 38:23

**confused** 12:20

**Congress** 9:20,25 42:1,18 63:17

**connection** 79:15,16 79:24 80:5 82:16

**consider** 44:1

**consistent** 31:11 32:15,19 37:25 40:9

**consistently** 38:13 48:9

**construct** 70:18

**construed** 79:18

**context** 22:7 29:18 30:3 53:13 63:11 70:5 89:6 96:7 102:25 104:2

**continued** 26:13 38:12

**continues** 65:3

**contours** 74:24 102:7

**contract** 78:17

**contrary** 34:16 80:3

**contribute** 76:1

**contributed** 73:19

**contributes** 42:7

**contribution** 7:16 23:13 25:12,13 27:3 27:6,11,17 72:6,10 72:13,18,21,25 73:5 73:18,20,22 74:5,9 74:22 75:3,6,11 76:7,10 79:1 92:11

93:1

**control** 90:10 99:23

**controlled** 43:23

**controlling** 43:16 67:20

**controversy** 85:12 87:2

**Cont'd** 4:1

**converted** 90:15

**copy** 86:3

**corporation** 1:11,19 2:4,11 3:2 28:9 45:16,22 53:5,8,8 53:10 81:9 100:22

**corporation's** 39:3

**correct** 36:19 51:21 56:23 63:3

**correctly** 63:5

**costs** 55:19

**counsel** 6:18 37:24 63:19 104:6 105:11 105:14

**count** 81:9

**counter** 94:17

**counting** 80:22 81:3

**couple** 49:7 52:24 98:16

**course** 9:9 15:19 16:6 33:6 37:1 58:10 59:21 72:22 73:20 77:13 80:13 84:4

**court** 1:1 8:18 16:16 19:20 27:25 38:11 38:13,14,22 39:3 40:15,18 43:11 44:18 45:11,13 46:20 47:23 48:15 49:4,14,16,20 50:1 52:20,21 62:14,17 62:18,18,25 63:2,6 63:6,7,8 64:2,5,11 64:17,22,24 65:8,11 65:14,19 66:6,6,14 67:10,14,24,25 68:13,23 69:13,17 72:2 73:2,4,8,8,15

Case: 11-5044   Document: 151-4   Page: 110   05/07/2013   929603   125
PICARD V. HSBC BANK, et.al.                    ORAL ARGUMENT 11/21/12

[Page 5]

73:24,25 74:3 77:20
78:3,15 79:9,17,18
79:22 82:1 84:17
85:14 86:2,10 87:10
87:10 89:12 92:23
92:24 95:13 96:11
102:11 104:6 105:3
**courthouse** 2:18 22:5
95:24
**Courtroom** 2:19
**courts** 8:23 9:1 63:15
74:17
**court's** 7:24 38:3
**covered** 49:1 79:16
80:11,16 81:15
**co-defendants** 82:8
**co-mingle** 32:5
**co-mingled** 31:20
**CPLR** 76:12
**crazy** 33:15
**create** 5:25 19:17
41:7 50:12 51:1,10
98:20
**created** 12:14 28:14
28:16 31:14 42:6,13
45:4 58:3,3 82:23
83:14 101:19 103:4
**creates** 14:3,7 29:8
41:8 49:10 51:3,23
51:24,25 83:20
**creating** 42:8 57:25
**creature** 42:15
**credit** 83:20
**creditor** 21:23,25
47:15 53:8 87:24
88:2 91:20 95:19
**creditors** 9:19 17:12
17:12 22:15 38:18
39:3 45:21 46:24
49:15 55:22 88:12
89:15,16,19 95:1,2
**critical** 38:15
**Crutcher** 3:21 72:3
**cry** 43:21
**current** 86:25
**custodial** 26:7 53:16

103:11,13
**custodian** 54:2
**custodians** 25:24
26:21
**customer** 9:15 10:15
10:17,19,22 11:13
11:16 13:3,4,9,13
13:24 14:16,21,22
14:24 15:3,4,6
16:19 17:23,24
18:22 19:15,24 20:6
20:14,17,18 21:11
23:17,20,22,25
24:15 27:22 28:22
29:9,15 30:25 31:15
33:2,5,8,10,13,14
33:22 34:3 35:2,18
35:19,21,23 36:8,9
36:19,20 37:8,11,16
39:10,12 41:9,23
49:10,22 50:4,23
51:4,6,10 52:10
54:13 64:14 71:4,19
71:21,22,24 76:14
76:22 77:7,14,21
78:1,4,7,10,16
87:16,20,23 88:14
88:15,22 89:2,9,10
89:18,18,24 90:2,3
90:6,11,19,23 91:3
91:4,7 92:15 93:15
96:24 98:1,9 99:6,7
100:2,20 103:6
**customers** 9:23 10:3
13:10 15:3,20 17:19
18:1 20:1,15 22:19
22:21,24 23:15,21
24:6,13,14 26:2,4
27:22,23 29:8 30:18
30:20 34:1,4,5,6
35:4 36:20 37:20
39:3 40:25 41:20
46:24 47:20 51:2
54:22,23 61:5 64:7
70:14,23 71:13
76:14 78:14,18 79:4

80:14,19,19,21 81:2
84:5,5 88:11 89:1
94:4 100:9,11,24,25
103:8,12,21
**customer's** 13:23
50:23 87:23 88:1
90:22

---

**D**

**Dabit** 79:17
**damage** 17:17,21,24
23:1,16,17 26:24
94:22
**damaged** 93:22 94:9
97:6
**damages** 76:10,11,16
79:3 93:21 98:5,7
**dangerous** 68:19
**Daniel** 2:18
**date** 105:8
**day** 41:2
**days** 49:22 64:20
**DC** 3:4
**de** 4:9
**dead** 60:14
**deader** 62:15
**deal** 34:20 42:21
69:10
**dealing** 59:7
**dealt** 49:20 53:11
55:5 56:16
**debate** 64:4
**debated** 91:18
**debenture** 15:9
**debit** 83:20
**debtor** 1:4 9:18,19
10:16 13:2,11,17
14:2,10,15 15:16
17:12,13,17,18
18:25 19:7,10,11,12
21:13,20,23 22:14
22:17 23:5 31:17
38:19,20 39:8 40:5
40:6 41:3 45:16
46:7,11 49:11,13
60:23 71:11 79:2

88:16,21 90:15 91:9
91:10,12,20
**debtors** 15:5
**debtor's** 19:1 50:1,2
50:6,8 90:16 96:13
97:5
**decades** 38:13
**decide** 50:3,5 68:5
**decided** 17:9 44:2
49:20 67:22 80:2
102:10
**decision** 9:8,9,11,12
21:1 38:5,5 44:19
44:19 45:4,12 47:4
60:16 65:20,23,24
70:5 73:4,10 74:12
74:19 76:3,20,25
77:20 96:10 98:2
104:8
**decisions** 9:10 25:4
38:11 44:14,15,21
74:16
**decisis** 65:25 67:11
68:14
**declared** 22:23 69:15
**deemed** 93:9
**deep** 56:14
**deepen** 83:22
**deepened** 83:23
**deepening** 22:20
83:15
**deeper** 49:2
**deeply** 103:2
**defendant** 28:1 73:14
73:17 74:2,7 75:4,9
92:25
**defendants** 3:12,23
4:8 24:20 25:23
26:9,12,21 34:19
48:24 72:4 82:9,9
82:13,14 83:4 84:20
85:16,25 86:6 94:17
96:3 97:8,9
**Defendants-Appell...**
1:15,23 2:7,15
**defendant's** 94:12

Case: 11-5044   Document: 151-4   Page: 111   05/07/2013   929603   125
PICARD V. HSBC BANK, et.al.                    ORAL ARGUMENT 11/21/12

[Page 6]

defending 53:24 83:6
defense 57:20 92:4
  102:3,5,8,12,13
define 12:11 40:17
defined 42:16 45:7
  55:14
defines 13:3
definition 10:22
  11:17 13:8,13 17:23
  41:22 71:4,24 88:14
  89:8,9,17,18 90:6
  90:12 91:4,6,6
definitively 38:14
defrauded 80:10
degree 96:25
Delandmeter 4:9
delegated 26:14
delicto 17:15 18:4
  57:20 90:1 91:25
  92:10 102:4,9,13
  103:3
delivery 100:11
DENNIS 2:21
depending 102:25
deposit 99:18
depositing 71:15
deprived 53:6
derivative 47:2
describe 11:24
designed 77:2,3 78:6
detail 28:12
determination 30:7
determined 38:14
  43:12 70:21 74:25
determines 39:18
detriment 24:16
developed 40:16
dictum 46:2
difference 94:24
different 7:19 9:16
  15:24 17:1,5,6
  18:10 41:1 42:4,9
  51:24 55:7 59:6
  76:18 96:2 101:17
  101:22
differently 40:24

difficult 45:25 52:15
  101:3
difficulties 70:4
dime 54:14
direct 47:1,19 53:10
  54:4 64:8 69:25
directly 35:18 54:2
  59:10,15 80:14
disagree 18:20 95:18
disappearance 22:21
discern 102:6
discuss 72:5 89:5
discussed 6:18 67:4
  69:3,7 71:1
discussing 85:20
  97:25
discussion 19:19
  70:10
dismiss 67:16
dismissal 65:15
dismissed 43:13
  62:18 63:9 67:21
  82:4 83:1
displaced 102:16
displaces 104:2
disposition 5:5
dispute 72:12 79:13
  83:8 84:1,2 85:3,5
disputes 82:23
disruption 52:6
distinction 19:6
  75:13 100:1 101:15
  102:6
distinguish 44:11,12
distinguished 66:24
distribute 15:21
  32:12 76:14 77:3
distributed 31:22
  37:17 70:16 103:21
distribution 31:9,10
  32:19 37:4 96:5
distributions 52:1
district 8:23 52:21
  74:17 79:22 85:23
dive 49:2
divided 6:6,9

Docket 1:5,6,6,7,7
  82:2
doctrine 39:18 102:1
  102:8 104:1
document 66:18
doing 5:6 20:1 25:18
  25:23 38:7 50:20
  71:2 98:12
dollar 30:25,25 33:19
  36:10,15,15 54:14
dollars 26:16 35:3,25
  42:7 56:12 61:11
  62:1 71:15
doornail 62:16
doubly 69:18
draws 61:5
dropped 99:12
dry 99:12,13,14
dubious 87:3
dumped 32:2
Dunn 3:21 72:3
duties 12:17 26:6,7
  47:6 52:18 54:1
duty 24:11 29:3
  30:14 47:6 53:15
  75:9 98:22 99:2

_____
            E
_____
E 2:20,20 3:1,1,18
  4:1,1 105:1,1
earlier 94:15 95:16
  97:14
ease 7:24
economy 96:1
effect 30:7 31:14
  33:15 102:12
effectively 100:15
  102:5
Egger 3:23 5:15,21
  8:12
ego 22:8,10 23:6 46:6
  96:13 97:5
Eichler 101:25
  102:11 104:1
eight 16:9
either 37:15 54:11

55:1 74:5 79:8
  83:16
element 24:1,5,18
  30:10 59:19,22
elemental 66:8
elements 31:7 98:20
  98:23
employ 17:22
employee 105:11,13
enables 28:19 103:5
enacted 9:24 10:1,1,4
  10:5 57:4
enactment 10:7
encourage 98:17
ended 49:23
endorse 67:15 73:22
endorsed 68:1,15
  84:17
enforce 27:11
enforced 40:19
enforcement 37:2
enforcing 27:17
engage 68:24
engaged 64:3
English 68:8
engrafted 12:17
ensure 103:8
entire 65:1 70:18
  93:7,17
entirely 43:14 69:22
entirety 63:8
entities 15:2,9,10
  88:23 89:23
entitled 10:19
entitles 71:22
entity 41:9 42:1,13
  54:11 81:4,5 94:19
entrusted 103:9
Equal 73:14
equally 97:6
equitable 25:9 56:18
  58:16 64:15,15
  70:19 102:13
equitably 77:3
equity 9:11 21:1
  34:18 55:14,17 58:7

Case: 11-5044    Document: 151-4    Page: 112    05/07/2013    929603    125

PICARD V. HSBC BANK, et.al.                    ORAL ARGUMENT 11/21/12

[Page 7]

75:16 76:15,17,20
  87:23 88:1 98:2
equivalent 43:9
  101:9
erroneous 44:20
escape 45:2
ESQ 3:4,8,11,15,18
  3:22 4:4,7,12
established 23:20
  29:15 30:12 34:23
  51:12
estate 13:20 14:7,11
  14:14,15,21 16:2
  19:16,21,22,25
  21:12,13,21,25 22:1
  22:7,14,16 23:5
  25:8 39:8 41:3,10
  42:10 46:7 54:6
  55:19 57:3 69:8
  77:7 80:20 87:21
  88:4,11 90:18,25
  91:3,13 93:8 95:20
estates 19:17,18
estate's 38:17 45:20
et 1:14,22 2:7,14 3:15
Europe 70:4 83:4
event 64:1 105:15
everybody 23:22
  24:14 86:7 97:6
exact 8:24
exactly 29:8 32:8
  45:1 47:23 60:14
  75:12 93:13
examine 46:3
examined 9:1
example 25:19 26:9
  93:10 94:14,18
  101:3
exception 81:4,7
exceptions 91:25
Exchange 10:8,9
  13:5
excludes 15:10 89:18
  89:19,20
exclusion 25:9
exclusive 102:18

exclusively 47:14
Excuse 67:1 102:20
exemption 81:5,8
exist 64:12
existed 64:21
existence 21:12 64:19
  65:22 66:15 68:10
exists 29:20,21 92:4
  94:20
expect 99:13,14
expectation 98:7
expecting 88:6
expert 43:3 104:7
explain 21:9 51:13
explaining 38:2
explicit 12:21
explicitly 15:7
express 68:7,9
expressed 68:11
expression 74:20
  88:18
expressly 32:24
  43:19
extend 69:20,21
extending 70:5
extent 20:4 22:14
  26:19 33:8 40:9
  44:14 49:1 55:18
  56:2 91:10 93:9
  97:3
extra 98:13

F

F 2:20 3:15 105:1
face 70:9
fact 11:18 15:5 18:4
  20:16 22:22 32:17
  33:2 34:16 39:15
  47:11 52:12 66:14
  68:2 69:23 72:19
  76:24 91:22 93:22
  96:8 101:2,17
facts 20:11 58:24
  93:5,5
failed 46:24 64:7
fails 13:7

failure 54:1
fair 27:12,19 28:4
  32:13 73:7 74:3
  97:22
fairly 84:19
fairness 32:15
false 60:19
Family 49:19
far 11:7 43:21 49:6
  68:12 89:2
Farace 45:12,18
feasor 27:2
feasors 26:22
federal 11:4,6,11
  65:8 72:14,17,20
  73:1,17 74:5,6,11
  74:24,25 75:16 76:3
  78:24 102:4,7,15
fee 61:14
feeder 26:3 53:17
  54:25 60:8 80:7,10
  82:15,19,20,24
  83:10 84:3 85:6
fees 26:13 42:6 55:20
  61:7,9,13
fellow 27:3
fiction 14:3,8 71:20
fiduciary 24:11 47:6
  75:9
figuring 58:20
file 86:4
filed 86:8
filing 49:23
filling 15:12 98:9
finally 7:17 25:11
  65:11 76:6
financially 105:14
Financier 4:9
find 15:13 41:6 86:4
finding 77:14
finish 26:9
firm 44:9 62:11
  76:23
first 6:16 17:4 23:10
  33:19 35:17 46:2
  54:21 57:13 74:3

75:2 84:23 86:1,5
  87:6 88:5 94:16
  99:1
five 5:17,21,24 59:25
flags 82:17
FLOM 3:17
flow 13:2
FLSA 74:4,14
focus 6:17 7:2,9
  28:10 48:25 93:5
folks 80:10
follow 51:14 84:16
followed 5:13,20,23
  74:18
following 5:14,21
  7:12 66:1
footnote 68:7
force 44:22 57:4
foregoing 105:6
foreign 53:18,18
  54:23 82:15,18,24
foreigner 84:1
form 51:4 65:9 68:14
formula 76:18,21
forth 45:8 105:9
forum 83:2
found 17:15 29:2
  66:6 75:2
four 3:17 23:11
Fourth 7:12
Fox 96:10,21
framework 8:4
Frank 81:25
FRANKLIN 4:4
frankly 13:11 69:15
  79:13 94:22 95:25
  97:24
fraud 19:23 24:12
  59:23,23,25 60:3
  77:1,4,15,15 78:13
  78:16,21 79:14,24
  80:6,9 89:22 97:16
  97:21
fraught 68:4
free 26:8
friend 42:24

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

**friends** 38:9
**front** 37:19
**frustrate** 102:14
    103:22,24
**frustrated** 103:2
**full** 16:4,5 87:10
**function** 103:11,13
**functionally** 31:6
    101:9
**fund** 13:18 14:16,22
    14:23,25 15:2,3,7
    15:12,13,15,16,21
    16:3,3,5,7,21 17:5
    17:24 18:21 19:15
    20:14 23:1,1,17,19
    33:2,5,9,11,13,22
    34:3 35:2,4,23 39:8
    39:11 42:6 49:10
    58:1,3 61:4 71:21
    77:8 80:11 84:3
    87:16,20 89:1,24
    90:1,3 91:3 98:9
**funds** 10:11,13 20:5
    25:24,24 26:3,15
    29:14,17 53:17,18
    53:19,19,20,23
    54:25 55:2 56:15
    58:13 59:8 60:8
    80:7 82:16,19,20,24
    83:11 85:6
**fungible** 20:22,23
    21:2 30:22 31:19
    32:6 70:16 100:1,16
    101:16,18,21
**further** 89:20 92:8
    105:10
**F.2d** 65:12

**G**

**general** 10:24 14:14
    19:16,21 25:22
    45:23 57:3 87:21,24
    88:11,12 91:2 96:16
    96:19
**generalized** 45:5
**generally** 38:16

45:19 55:11
**generis** 12:17
**getting** 57:5,10 98:9
**giants** 64:2,4
**Gibson** 3:21 72:3
**give** 12:5 25:19 37:13
    74:4 93:14
**given** 13:23 71:1
**gives** 101:8
**glad** 8:5
**glove** 54:9
**go** 6:15 7:1,6 11:11
    14:13,14 15:12,17
    21:8 23:19 25:11
    26:11 35:8 39:22
    44:21,23 46:3 52:5
    62:19 63:11 89:17
    91:2 92:16 95:9
    98:19 99:10
**goal** 103:24
**goals** 102:14
**goes** 15:16 17:4 32:9
    35:17,18 40:8 41:17
    65:21 71:8 77:4
    85:10 88:14 89:8,19
    91:3 97:13
**going** 11:10 17:14
    20:5 26:5 27:2
    37:16 38:2,7 48:22
    48:25 49:2,4 57:19
    67:9 70:16 83:19
    84:24 91:16 92:5
    100:12
**good** 8:14,16,19 28:7
    37:22 42:24 43:6
    44:24 48:21 56:11
    62:9 69:21 71:5
    74:20 81:23 87:12
    89:13 95:21
**gotten** 63:17
**GOTTLIEB** 3:10
**government** 61:15,17
    61:19,23 62:3
**government's** 69:4
**grain** 20:22 31:25
    32:1,2,2,4,9 100:13

**grants** 14:10 42:17
    42:18
**grateful** 104:6
**greater** 42:9 45:15
**ground** 72:8 77:25
    79:6,9 85:15 89:13
**grounded** 39:24
**grounds** 38:6 83:2
**Groupement** 4:9
**groups** 59:11,14
**guess** 14:12 18:19
    23:19 24:17 48:24
    86:21 87:5 91:14
**guise** 47:20
**Gutierrez** 66:18

**H**

**H** 1:8,16 2:1,8 3:4
**habit** 71:5
**half** 32:4 35:17,25
    36:16 42:7 56:11
**HAMILTON** 3:10
**hand** 10:5,6,21,21
    54:9
**handle** 99:13
**hands** 15:15
**happen** 51:9 84:12
**happened** 51:8
**happening** 53:4
**happens** 87:19 94:15
**happy** 48:18
**hard** 83:12
**harken** 98:1
**harm** 53:9,10 84:4,5
    84:19 93:7
**harmed** 61:5
**hate** 42:23
**HBSC** 48:23
**heady** 64:20
**hear** 5:11,16 8:12
**heard** 59:1 60:7
**hearing** 5:7
**heavily** 101:25
**hedge** 53:19
**held** 41:24 45:21 64:5
    71:12 72:17 73:2,19

74:3 76:19 78:3,19
    79:24 80:5,8 92:25
    96:11 100:6,18
**help** 83:16
**helped** 93:25 97:12
    97:20
**helpful** 49:4
**helping** 94:2 97:22
**hereinbefore** 105:9
**Herman** 73:24
**Hermann** 3:23
**herring** 50:11
**high** 41:5
**Hirsch** 46:18
**history** 34:13 41:8
    56:24,24 57:9 63:23
**hits** 54:13
**hold** 25:25 30:16
    39:1 75:7 95:21
    100:22
**holders** 15:9 16:25
**holding** 10:25 26:22
    46:2,4,5 69:24 78:8
    82:3 100:23
**holdings** 63:1
**holds** 11:15,15 74:20
**Holmes** 49:15 56:16
    58:19 67:23
**HON** 2:21,22
**Hondequin** 3:23
**Honor** 6:3,10,17 7:7
    7:19 16:15 18:7
    37:23 40:2 41:12
    42:12 43:4 44:24
    52:1 53:14 54:17
    56:17 58:10 59:16
    59:22 60:14,16 61:9
    62:8 67:23 76:19,24
    81:21,24 86:22
    92:19 96:6 97:14
**Honors** 7:15 8:15,20
    9:3 28:8 39:23
    46:17 48:17,22
    70:25 71:3 72:7
    88:13 96:9 98:16
**Honor's** 40:23 98:2

PICARD V. HSBC BANK, et.al.                    ORAL ARGUMENT 11/21/12

hook 61:16,18
hop 94:14
hoped 7:23
hoping 8:1
host 48:5
Hostetler 3:6 8:18
HS 48:23
HSBC 1:14 2:14 3:12
   5:15,22 7:1 8:13
   24:9 48:24 53:14
   55:9 59:1,2 60:1,7
   82:8
hundred 71:15
hypothetical 35:22
   55:4,6 93:14
hypothetically 54:7

**I**

IBM 100:9,10
idea 14:11 18:9 21:22
   76:7
identical 31:5,6
   101:8
identifiable 20:17
identified 70:15
identify 52:15
identity 93:20
imagine 82:22
impaired 87:3
implications 96:12
implicit 63:16 101:15
implied 28:24 31:8
   44:16 74:5
implies 73:6
imply 45:14 56:18
important 14:17
   31:12 50:10 53:3
importantly 29:21
   43:25
imported 92:5
imposed 29:3 30:1
   32:11 72:25 74:22
   74:24 75:15
improve 71:2
improvement 68:22
inappropriate 89:6

include 90:8
included 20:6 91:11
includes 86:10 90:14
   90:16,20
including 9:8,11
inconsistent 21:6
   70:22
incorrect 49:12
increased 97:17
Indenture 75:3
independent 21:14
   22:9 43:15 44:10
   56:2 84:22
independently 66:19
indicated 56:25
indirectly 53:9
individual 35:4 42:8
   47:1,2,19 100:25
individuals 15:8
   47:22,24 48:5
industry 9:23 69:5
ineluctably 47:16
inevitably 84:24
influx 83:11
injure 83:12
injured 22:24 53:25
   54:2 59:15 94:7,11
injuries 39:2
injury 16:21 17:13
   19:11,12,12 21:21
   22:16,18,21 23:23
   45:5 47:3 53:5 54:3
   54:4 73:19 76:12
   83:14 85:2,11 96:4
   96:24 97:1
innocent 24:14 43:20
   91:23
inside 94:1
insiders 91:23
insightful 63:22
insolvency 22:20
   49:24 77:23 83:15
   83:22,23 96:23 97:2
insolvent 13:8 77:4
   83:20
instance 13:21 90:20

97:4
instant 74:12
institutions 48:6
instructive 16:17
insurance 57:15,24
   58:3
intend 6:15
intends 29:22 30:5
intent 29:25 78:17
intentional 94:9
interaction 28:17
interest 11:20 12:13
   88:22
interested 105:15
interesting 63:18
   77:17 80:15
interestingly 38:8
interfere 102:14
interfering 37:5
internal 15:22
International 4:8
interpreted 96:22
interrupt 18:7
Intervenor 3:5
Intervenor-Appell...
   1:12,20 2:5,12
intuitive 5:11
invent 64:12
invented 64:10,13
invest 47:4 80:10
invested 53:19 59:2
   59:25 80:7 83:10
   92:1
investing 26:3
investment 1:3,9,17
   2:2,9 3:19 5:9 70:3
   77:25
investments 53:20
investor 1:11,19 2:4
   2:11 3:2 10:12 28:9
   78:2 89:21 98:10
   103:23
investors 15:8 53:19
   53:23 54:22,23
   58:14 59:9 80:7
   82:19,24 85:5 98:4

invests 10:12
invoked 43:18
involve 79:20
involved 55:20 59:3
   60:1
involvement 60:10
involving 49:21 55:9
in/cash 21:1
irrelevant 75:18,22
irrespective 29:21,24
Irving 1:8,16 2:1,8
   3:8 8:19
issue 15:11 25:1,2
   31:4,5 44:5 49:9,18
   50:5 64:18 66:15
   67:22 72:14 73:13
   74:20 78:11,12,25
issues 7:10,25 9:1
   72:5 79:12

**J**

J 3:8,11
jackpot 54:13
JACOB 61:20
Jacobs 2:21 5:1 6:6
   6:12,22 8:1,7,11,16
   10:23 11:6 15:11
   18:5,8,17 23:24
   24:23 33:18,23
   34:25 35:7,9,14,16
   36:1,6,14,22 39:6
   41:13 44:3 45:23
   46:13 48:1,13,19
   51:13,19 54:7,19
   55:4,10 56:6,10
   59:18 61:15 62:6,20
   68:20,25 77:10
   81:20,22 84:10
   85:17 86:15,18,24
   95:9,12 96:18 99:8
   99:11,18 100:12
   101:11 104:3,5
jail 94:3
Jersey 4:12 105:5
John 3:15 6:4 37:23
joint 25:17 26:22

27:2

**JPMorgan** 1:22 3:15
5:14,21 6:4,16 8:12
37:25 48:12 56:25
66:17

**judge** 2:21 5:1,1 6:6
6:12,22 8:1,7,11,16
10:23 11:6,23 12:14
15:11 17:9 18:5,8
18:17 20:3 21:5
22:6 23:4,8,24
24:23 26:11,25 28:5
33:18,23 34:25 35:7
35:9,14,16 36:1,6
36:14,22 38:4,5
39:6 40:2 41:13
42:3,21 43:1,7,7
44:3 45:23 46:13,19
47:10,10 48:1,13,19
51:13,19 54:7,19
55:4,10 56:6,10
57:23 59:18 61:1,4
61:15,20 62:6,20,24
64:2,3,24,25 65:1
65:14,16 67:1 68:19
68:25 69:15 70:6,21
74:19 75:1,5 77:10
78:14 80:4 81:20,22
83:13,18 84:10
85:17,23 86:15,18
86:24 90:4 95:9,12
96:18 99:8,11,18
100:12 101:11
102:20 104:3,5

**judges** 43:6 62:9 64:2
72:16 74:15,17 79:8

**judgment** 27:11,18
54:15 65:2

**judicial** 88:18 96:1

**jumping** 67:8

**juridical** 41:9,25
94:19

**jurisdiction** 43:13
63:10 65:9,10,14,18
66:7 85:13

**Justice** 67:13 86:12

---

**K**

**Kaplan** 83:18
**KATTEN** 4:6
**Katz** 3:13 37:24
**keep** 11:13 98:5
**keeping** 96:4
**key** 72:11
**kind** 12:18 47:18
56:7 59:12 64:3
**kinds** 47:25 50:18
52:9
**King** 3:22 7:13,13
72:2,3 77:12 81:21
91:16

**King's** 91:16
**Kirschner** 9:8 89:11
**Klinger** 92:20
**knew** 44:17 69:16
94:4
**know** 7:24 11:7 12:3
15:14,23 18:11
20:19,20 22:23
28:21 32:14 33:7
34:5,8 42:5 46:15
53:18 58:18 59:10
59:22 66:9 67:11
93:19,19 98:6 100:7
100:20 101:24
**knowing** 26:4
**knows** 32:8
**Kranz** 3:23

---

**L**

**L** 1:3,9,17 2:2,9 4:7
5:9 17:25
**la** 4:9 28:7 33:20,24
35:6,8,12,15,20
36:3,7,18,24 98:15
99:10,16,21 100:14
101:13 102:24
104:4
**LaBarbrea** 66:17
**Labor** 74:3
**lack** 63:9 68:15
**lacks** 82:5 85:7
**language** 25:6 29:2

---

34:11 39:24
**Laplume** 4:13
**LaROSA** 3:4 24:25
28:8
**law** 6:19 7:11 9:2
10:21 11:4,4,7,8,10
11:11 23:11 27:1,10
27:13,24 28:18,24
29:2,3 30:1,8,20,21
31:8,20 32:11,23
34:14,18,24 43:6
44:3,4,10 46:6,6,14
46:18,21 47:12
52:13 54:8 58:16
65:6,6 66:4 67:16
69:21 72:14,20,20
72:23 73:1,3,5,6,17
73:22 74:6,6,8,11
74:11,23,24,25 75:8
75:11,16,20,21,21
76:3,4,4,8,9 78:24
78:25 81:5 85:22,24
86:9,13,25 87:1,7
87:12 88:19 91:17
91:20 98:21 101:16
102:3,8,12
**lawful** 28:25 30:4,6,8
30:10 98:21,25
**lawnmower** 41:16,16
41:18 94:14,15,19
94:25
**laws** 10:6 71:12
**lawsuit** 18:2
**lawsuits** 17:1 22:4
42:2 53:24
**lawyers** 55:20
**lay** 5:6
**leading** 18:9
**learned** 44:18
**leave** 62:14
**leaving** 71:20
**led** 47:16
**left** 32:13 33:19
55:23
**legal** 12:9 14:3,7 43:9
**legislation** 57:7

---

**legislative** 34:12 41:8
56:23,24 57:9 63:23
**Lehman** 20:12 51:8
52:3 61:12
**length** 67:4
**letter** 44:3
**let's** 35:16,21 36:1
88:4
**level** 11:20 79:23
98:11
**liability** 76:16,17,23
79:3 83:21
**liable** 73:12 74:2
76:10,11
**Liberty** 3:10
**life** 16:22 43:10
**light** 48:16 80:2
**limitation** 33:3,3,17
**limitations** 52:16
**limited** 33:1 34:15
42:17,18 50:13 57:6
57:10 93:11
**limits** 34:6 40:17
**line** 6:20 38:8,10
40:20 41:15,21
47:16 102:10
**Lipton** 3:13 37:24
**liquidation** 1:9,17
2:2,9 14:20 26:18
28:19 32:18 40:10
**liquidators** 4:14
**literally** 80:18
**litigation** 2:25 65:3
67:3 78:21
**Littaye** 4:8
**little** 21:5 101:3
**LLC** 1:3,9,17 2:2,9
**LLP** 3:6,17,21 4:6
**LNC** 74:19 75:1
**loan** 15:9 61:23
**loans** 19:23
**Lombard** 64:2 65:17
**long** 38:10 63:23,24
91:14 100:7,9 101:7
**look** 9:7 17:2,3,8
20:12 24:9 25:4,5

---

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

42:16 46:17,18,18
46:19 49:12 58:19
58:24 59:13 60:18
73:4 78:23 83:14,16
86:23 89:12 98:19
103:6
**looked** 13:1 46:21
79:23
**looking** 21:10 39:11
62:1 73:10
**looks** 56:7
**loss** 36:15 56:11
**lost** 31:20
**lot** 7:24,25 56:19
84:13 85:19 96:1
99:5
**low** 41:5
**lowest** 11:20
**luckily** 11:9
**Luxalpha** 4:13,14

**M**
**Madison** 4:6
**Madoff** 1:3,9,17 2:2
2:9 5:8,9 17:25
22:22 24:6,13,16,19
25:15 26:5,7,8,14
43:23 44:8 47:8
49:21,22 51:9 53:15
53:16 60:12 61:13
76:15,23 79:23,24
80:6,8,11 82:21
83:24 84:6,7,23
88:10 91:22 93:15
93:15 94:1,2,25
96:23 97:4 98:11
**Madoff's** 84:5
**Magon** 4:9
**MAHONEY** 2:23
105:3
**main** 14:12
**maintain** 28:1 38:20
65:20
**maintained** 27:16
**Maitre** 4:13
**Management** 3:19

**manner** 68:4 74:1
**Marco** 3:18 62:10
**margin** 52:7,8
**market** 52:6
**Marrero** 80:4
**Marshall** 3:22 7:13
72:3
**mass** 47:19
**massive** 44:8 47:21
**mathematical** 76:18
76:21 77:9
**matter** 30:7 46:5 63:9
65:13,18 66:7,10
73:16 77:10,12
78:24 85:13 94:18
95:24
**matters** 75:24
**McCabe** 92:21
**McMahon** 43:7
47:10 72:16 74:15
79:8
**McMahon's** 38:5
**MEAGHER** 3:17
**mean** 12:14 15:13
20:8 33:9,22 37:7
39:17 41:15,22
46:16 56:10 57:24
87:2 99:23 101:2,5
101:18 102:24
**meaning** 45:24 67:5
**means** 13:9 68:8
92:15 96:19 101:19
**meant** 21:23
**Mediators** 9:9 16:16
17:3,8,9,11 46:19
**membership** 42:5
61:7,9
**mention** 50:25 56:20
**mentioned** 31:23
38:9 40:2 101:24
**merge** 84:11
**merits** 48:11 84:11
**midwest** 31:25
**million** 35:17,17,25
36:10,15,17 42:7
56:12 61:25

**minor** 6:11
**minute** 21:9
**minutes** 5:12,13,16
5:17,19,20,23,24
6:23,24 7:2,6
**misapplied** 83:24
84:8
**misappropriated**
83:25 84:8
**misrepresentation**
60:4
**missed** 82:16
**misspoken** 63:4
**Moloney** 3:11 6:25
48:21,22 51:15,21
54:16,20 55:6,12
56:9,16 58:2 59:21
61:3,8,17,22 62:7
69:3,7 93:4
**Moloney's** 7:2
**moment** 52:19 96:23
**money** 14:11,24 15:2
15:9,14,20 16:10
22:22 26:5,6 28:3
36:4 47:5,8 49:22
50:21 54:6,10,14
55:3,16,21,25 58:6
61:6,20,24 62:4,5
68:20 69:4 77:3
82:19,20 83:10,19
83:25 84:7,9 87:21
88:3,7,7,9 90:3,21
90:22,24 91:1 93:17
**monies** 41:2
**months** 16:9,9,9
**MOORE** 4:12
**morning** 5:3 8:14,16
8:19,20 28:7 37:22
48:21 49:6 62:9
**Morristown** 4:12
**move** 40:25 52:13
**moved** 41:20
**moves** 41:15
**moving** 82:13
**Moynihan** 2:18
**MUCHIN** 4:6

**Mukasey** 75:2,5
**Mukasey's** 74:19
**Mulligan** 64:3 69:15
**multitudinous** 69:23
70:4
**MV** 77:18

**N**
**N** 3:1 4:1
**name** 20:17 37:23
48:22 51:5,6,10,17
62:10 100:2,4,5,6
100:17,18
**named** 81:16 99:6
**names** 27:24 94:5
**NANCY** 2:23 105:3
**narrow** 69:23
**nature** 13:10 30:9,11
70:1
**nearly** 79:22
**necessarily** 52:2,3
79:20,20
**necessary** 31:7 98:20
**need** 27:3 62:19
84:16 94:10,11
**needed** 9:24
**needs** 79:10
**neither** 34:11 47:10
62:23 105:10,13
**net** 9:11 21:1 55:14
55:17 58:7 75:16
76:15,17,20 87:23
88:1 98:2
**never** 14:1 41:4 42:2
44:1,2,4 51:7 59:1
60:6 61:16,18 63:17
88:16,23 89:22 90:1
**new** 2:20,20 3:7,7,11
3:11,14,14,18,18,22
3:22 4:3,3,7,7,12
27:1,10,12,23,25
41:9,10,25 42:1,13
44:2,9 45:5 47:12
58:11,15,19 72:20
75:21 76:8,8 89:11
91:20 92:22,24

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

93:17 105:4,5,19
**Newdow** 66:17
**NEWMAN** 4:11
**nicely** 83:17
**nomenclature** 12:11
**nonconvenience** 83:2
**non-fungible** 100:1,3
101:14,16,20
**normal** 46:8
**Northwest** 73:2,13
73:25
**NOS** 1:5
**Notary** 105:4,19
**note** 27:20
**noted** 67:2 104:10
**notion** 12:20 21:6
71:19
**notwithstanding**
43:10
**November** 1:25 2:16
**nullity** 66:11
**number** 16:18 32:16
38:15 43:5,17 66:12
82:23
**numerous** 83:3,3
**NW** 3:3
**N.Y.2d** 92:20,21

**O**

**O** 2:20
**obligation** 29:17,20
29:21,23 37:12
65:25 72:24,25
73:11 74:22,23,25
75:14,15 76:13
**obligations** 75:17
**observation** 63:18
67:11
**observe** 65:16 67:9
69:9
**observed** 68:10
**observing** 63:13
**obvious** 33:16
**obviously** 91:8
**occasion** 44:1
**occur** 27:18

**odd** 86:24
**offer** 67:18
**offered** 66:3,16
**Ohio** 46:6,14
**okay** 32:5 95:10
**old** 20:20
**older** 77:18
**omnibus** 100:21
**once** 13:7,7 27:18
29:23 30:11
**ones** 47:14
**operation** 10:20
**opinion** 46:19 63:25
65:17 66:5 67:18
68:7,9,11
**opinions** 57:8
**opposed** 21:13 22:9
**oral** 1:5 5:3
**order** 5:14 6:10 7:7
7:19,23 15:20 86:3
**ordinary** 20:9 40:17
**Oren** 3:8 8:18
**organized** 81:10
**original** 65:15
**ought** 68:23
**outcome** 105:15
**outlier** 80:1
**outlined** 38:1
**outset** 27:16 38:1
**outside** 93:5
**overall** 12:23
**overarching** 89:7
**overlap** 84:25
**overlay** 10:2 12:15
**overseas** 25:24
**overturn** 42:19,20
85:24
**overwhelming** 80:3
**owe** 62:11
**owed** 30:18 47:7
**owes** 68:13 100:8
**owned** 88:25
**ownership** 88:22
**owns** 39:20,21 46:10
46:11,22 95:16

**P**

**P** 3:1,1 4:1,1
**PACCIONE** 4:7
**Page** 56:25
**paid** 26:1 27:4,19
28:3
**panel** 5:2 43:11,12
44:1,19 50:5 64:25
65:1,11 87:10
**panels** 64:24
**papers** 77:19 88:17
92:19 96:11
**parallel** 65:5
**parent** 70:3
**pari** 17:15 18:3 57:20
90:1 91:25 92:9
102:4,9,13 103:3
**Park** 3:21
**Parkway** 4:11
**part** 14:20 30:14 39:1
56:17 78:5 103:15
**participant** 43:22
**participate** 5:4 15:7
88:12
**participated** 57:25
**participation** 23:21
103:17
**particular** 28:13 47:4
47:5 70:14 78:2
99:24 103:1
**particularized** 16:23
69:22 96:16
**particularly** 19:25
100:4 101:6
**parties** 5:7,10,14,21
7:25 15:18 30:9
38:17,25 39:1 45:20
48:8 53:25 56:4
57:19 70:12 71:16
71:23 72:12 73:18
76:9
**partner** 69:17
**party** 16:24 32:9 73:7
84:23 105:12
**passionately** 48:11
**Patrick** 2:18 4:8

**pattern** 32:17
**Paul** 4:13 16:15,21
17:2 21:8,10,18
22:13 44:24,25,25
45:4,10,14,24 46:3
46:11,13 53:2,3,11
95:8,15,17,18 96:8
96:12,14,14,21,22
97:5
**pay** 15:4 19:23,23
26:20,24 27:12 52:8
56:14 58:5 61:5,14
62:2 73:15 75:15
97:22
**payable** 79:3
**paying** 54:24 55:1
62:3,5 79:2
**payment** 40:25 41:21
87:16,17 89:2
**pays** 55:19,20 57:16
58:6 73:7
**Pearl** 2:19
**pending** 48:2
**people** 15:1 50:19
55:2 58:25 59:5
81:9 84:3 88:5
89:13 94:1
**percent** 35:9
**Pereira** 45:12
**perfect** 8:9 33:6
83:21
**perfectly** 46:8
**performs** 103:10
**period** 28:15 65:4
**permit** 43:4
**permits** 72:7
**permitted** 38:25
**person** 29:11 56:13
57:15,16 59:14,15
77:14 78:7 80:25
81:13,17 83:19
**persuasive** 62:21,23
66:23,25 68:18
69:10
**persuasiveness** 67:2
67:20

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

**phony** 60:21,22
**Picard** 1:8,16 2:1,8
  3:8 5:12,16,19,23
  8:12,19 52:18 66:17
  96:10
**picture** 49:7,8 50:9
  52:25 53:1
**piece** 11:21
**Pierre** 4:9 84:18
**Pioneer** 3:19 5:15,22
  8:13 82:8
**place** 70:20 105:8
**placed** 63:11
**plain** 25:6
**plainly** 40:3 41:21
**plaintiff** 64:12,13
  81:16 84:19
**plaintiffs** 96:2
**Plaintiff-Appellant**
  1:10,18 2:3,10
**plan** 72:5
**play** 89:23 96:15
**Plaza** 3:7,10
**PLC** 1:14 2:14
**please** 8:17 67:6 72:2
  81:25
**pledge** 50:17
**plenary** 65:10
**pocket** 56:14
**podium** 7:8,14
**point** 11:18 14:13
  16:15 17:1 18:4
  25:3 49:8,18 50:9
  52:12 53:1 56:24
  60:5,15 72:22 76:6
  87:6,17,22 88:19
  91:22 96:9 97:13
  101:14
**pointed** 52:1 57:8
**points** 49:7 52:25
  72:11 98:16 99:25
**policy** 78:17 89:8,13
  89:14
**Pollack** 43:7
**Ponzi** 13:22 22:23
  54:9 93:18

**portion** 58:7
**PORZIO** 4:11
**posit** 57:11
**position** 9:4 16:20
  26:19 97:14,19
**possession** 10:14
  11:14 13:17 28:25
  29:17 30:2,8,11,17
  88:24 98:21,25
  99:22
**possessory** 12:13
**potentially** 12:16
  50:22
**power** 37:19 42:1,17
  66:9 67:20
**powers** 18:10,13,16
  18:18 40:4 92:2
**precedential** 66:5,13
  66:20
**precedents** 38:3
**precedes** 63:23,25
**precipice** 93:16
**precisely** 6:16 21:16
  41:19 49:17,18
**precluded** 28:2
**precludes** 81:19
**preclusion** 72:9
**preemption** 79:11
**premise** 12:22,25
**premised** 21:11
**prepared** 7:9
**present** 23:9 80:13
**presentation** 98:18
**pretty** 98:24
**prevented** 37:5
**pre-liquidation**
  28:15,16
**primary** 78:17
  102:18 103:22,24
**principal** 16:5 98:4
  103:7
**principle** 102:17
**principles** 100:16
**prior** 93:1
**priorities** 51:25
**priority** 40:25 49:14

50:4 70:22 87:25
**private** 64:6,20,23
  65:21
**privity** 64:8 70:1,2
**pro** 20:4 21:4 27:4
  95:2 96:4
**probably** 16:10 80:2
**problem** 5:25 95:13
**proceed** 94:8
**proceeded** 67:16
**proceeding** 20:12
  39:16 40:10 65:5
  77:24
**proceedings** 105:7
**process** 63:10
**produced** 60:20,22
**producers** 31:25
**profit** 89:15
**progeny** 9:7 97:25
**prohibiting** 103:19
**prolonged** 93:18,19
  97:17
**prolonging** 93:23
**propagate** 97:12,20
  97:22
**propagated** 97:18
**proper** 16:24
**properly** 20:6 82:4
  103:10
**property** 10:15,16,22
  11:13,15,21 12:13
  13:3,4,9,9,13,16,19
  13:23 14:2,6,9,9,16
  14:21,23,24 15:3,4
  17:21,23,24 18:22
  19:2,3,10,10,16,24
  20:2,6,14,23 21:4
  21:25 23:17,20
  28:22 29:4,5,7,23
  29:25 30:3,5,15,15
  30:22 31:16,19,21
  32:6,13 33:5,14
  35:22,23,24 36:11
  37:8,11,15,16 39:12
  40:5 41:10,23 49:11
  49:13,13,16 50:1,2

50:6,8 52:2,4,7,9,16
  52:17 64:14 70:14
  70:15 71:5,10,19,21
  71:22,25 76:12,14
  77:8,11,13 87:16,20
  88:15,15,16,22,25
  89:2,9,24 90:2,3,6
  90:12,16,19 91:3,4
  91:7,9,12 94:23
  95:3,6,20 98:9,22
  98:23 99:2,7 100:2
  100:16 101:17,18
  101:21 103:6,9,20
**proportion** 34:9
**proposal** 8:2
**propose** 7:1,5
**proposing** 7:7
**proposition** 10:24
  66:4
**propositions** 17:10
  38:15
**protect** 77:1 78:6,16
  78:18
**protected** 78:5
**protecting** 10:3
**protection** 1:11,19
  2:4,11 3:2 9:15,18
  9:18,22 16:19 19:7
  28:9 50:24 52:11
  92:15 103:23
**prove** 76:22
**provide** 9:22 51:5
  53:14 79:9
**provided** 37:18 53:16
  54:5 55:25 57:2
  82:15
**provides** 31:21 32:24
  55:24 57:13 69:6
  83:16
**provision** 61:18,23
  63:20 80:22 81:4
  87:19
**provisions** 37:13 49:3
  103:4
**proximate** 68:6
**Public** 105:4,19

Case: 11-5044   Document: 151-4   Page: 119   05/07/2013   929603   125
PICARD V. HSBC BANK, et.al.                    ORAL ARGUMENT 11/21/12

[Page 14]

**pulse** 43:9
**purchase** 79:15,21,25
**purchased** 20:25
**purports** 47:13
**purpose** 10:3 14:5
    51:22 81:11,12
    95:22 102:19 103:7
**purposes** 10:2 19:19
    34:2 60:24 84:15,25
    93:8 99:20 102:14
    103:1
**pursuant** 52:23 74:13
**pursue** 46:9
**put** 8:3 15:20 16:19
    37:19 50:21 52:16
    53:13 70:20 71:14
    82:19,20 84:6 90:15
    94:25
**puts** 70:22
**P.C** 4:11

**Q**

**qualify** 50:3
**quantity** 30:18
**Queensboro** 92:21
**question** 6:20 15:17
    16:14 17:4 23:3
    24:18 29:4 31:10
    39:19 40:23 44:24
    46:10,21,23 47:9,11
    48:14 53:13 57:14
    57:22 61:1 66:22
    67:8 79:14 80:15
    86:22 93:25
**questionable** 88:8
**questioned** 87:8
    91:21,23
**questions** 7:15 24:22
    48:17 49:5 56:20
    68:5 72:8
**quick** 25:19 43:3
    61:1
**quickly** 24:21 25:11
    92:17 95:11
**quirk** 46:14,16
**quite** 83:17

**quote** 40:11
**quote/unquote** 29:10
**quoting** 40:4 45:14
    74:10,21

**R**

**R** 2:20 3:1,22 4:1
    105:1
**race** 22:5
**raided** 20:13
**raincoat** 99:12,14
    101:3,4,5,7,9
**raised** 25:20 61:10
    72:6
**raises** 56:19
**raising** 61:13
**Rakoff** 43:7 47:10
    70:6,21 72:17 74:16
    79:8 83:13
**Rakoff's** 38:5
**Ralf** 3:23
**rarely** 51:9
**rata** 20:4 21:4 27:4
    95:2 96:4
**ratable** 31:9,10 32:18
    34:7 36:12
**ratably** 31:22 32:14
**reach** 79:10
**read** 5:18 33:17
    50:16 67:19 71:6
    93:12
**reaffirm** 45:17
**real** 58:7 70:9 99:6
**realized** 9:21
**really** 11:19 12:21
    20:7,25 24:8 28:15
    41:1 54:17 66:10
    67:22 69:11 72:10
    79:12 85:5 92:6
    97:7 98:19 99:7,25
    103:7
**reason** 14:17 22:2
    30:23 31:2 37:1
    39:24 44:10,12
    69:19 80:4 85:7
    88:13 94:8 96:14

**reasons** 43:15 66:1
    66:19,23
**rebuttal** 5:24,24
    27:14 85:18
**receive** 36:10
**received** 29:7,13
    30:15
**Recess** 8:10
**recite** 11:10
**recognize** 31:13
**recognized** 32:16
    70:6
**recognizes** 30:21,21
    101:15
**reconcile** 27:7
**record** 50:6
**records** 32:7 101:1
**recover** 37:8,11
    89:24 90:2 103:5,18
**recovered** 37:16
**recovering** 77:15
    103:20
**recovery** 19:15 34:3
    80:20 93:2
**red** 48:16 50:11
    82:17
**Redington** 7:10 9:9
    34:23 42:22 43:2,6
    43:8,25 44:6,11,13
    44:20 62:14 63:12
    63:21,25 64:1 65:12
    67:4,15,15 68:1,9
    68:10,15,23 69:21
    69:24 70:5 85:21,22
    86:1,9,13 88:17,18
**Redington's** 43:17
**reduce** 29:17
**Refco** 83:18
**reference** 28:13
**referred** 14:21 44:3
**referring** 50:12
**refers** 14:23
**refine** 40:16
**regard** 30:4 32:21
    91:14 96:9 101:23
**regardless** 92:9

**regime** 52:10
**registered** 51:17
    100:3
**regrettably** 67:25
**regular** 42:9 102:22
**regulation** 99:4
    103:25
**regulatory** 69:25
    99:1 102:15
**rejected** 39:4 74:7
**related** 44:15
**relates** 49:8
**relating** 1:5 101:20
**relationship** 12:9,12
    12:16 29:12,15,19
    30:4,9,12 94:6,10
**relative** 105:11,13
**relevant** 80:24
**reliance** 12:20 24:2,6
    24:12,17,18,19,20
    59:4,18,22 60:13,14
**relied** 24:15 60:9,11
    101:25
**rely** 60:19 80:23
**relying** 58:17,19
**remain** 10:14,15
**remaining** 31:21 34:5
**remand** 43:11,12
**remember** 11:8 62:1
    67:13 88:4
**removes** 15:7
**Rene** 3:23
**repaired** 41:16
**repay** 56:15
**repeat** 6:13
**replenish** 35:1 56:15
**replenished** 36:16
    87:20
**replenishing** 15:13
    15:15
**repo** 50:18
**REPORTED** 2:23
**reporter** 95:13 105:4
**REPORTING** 2:24
**reports** 60:19
**represent** 82:1

Case: 11-5044   Document: 151-4   Page: 120   05/07/2013   929603   125
PICARD V. HSBC BANK, et.al.                    ORAL ARGUMENT 11/21/12

[Page 15]

representative 81:16
representatives 4:14
representing 6:25 7:4
    7:18
represents 7:13
require 76:21
required 28:24 29:13
    30:16 75:15 76:22
requirement 79:17
requirements 32:10
requires 10:20,20
    11:5,12,12 68:17
    76:9
reserve 104:8
reserved 99:23
resources 71:9
respect 7:15 29:6,25
    33:25 40:5 48:11
    68:14 69:25
respond 16:14
response 42:14
responsibilities 38:1
responsible 26:23
    39:1
rest 79:20
result 53:9 54:5
    82:18 84:21 103:18
resulted 83:10
resuscitated 63:14
return 10:18 21:3
    52:2,3,6 70:12,14
returned 20:18
returning 20:1,7
reversed 43:11 62:16
    63:7 65:19,22 66:14
    87:9
reverses 64:18
RICO 68:5
right 13:25 22:12
    23:7 25:1 27:5,16
    29:16 36:24 39:13
    42:11 43:8 45:1
    46:1 55:14 56:19
    57:6,10,12 58:21,23
    64:6,19,21,23 65:21
    69:16,16,18 72:13

72:18 73:21 74:4,9
    74:21 75:2 79:1
    85:4 86:21 88:24
    91:5,19 93:1 99:23
rightly 73:16
rights 12:16 15:18,19
    25:7,10 32:22,25
    33:1,4 34:14,15,17
    34:24 37:1,3 45:15
    45:16 51:1 55:13
    63:16 69:7 73:5,6
    92:13
rise 62:13
Rockefeller 3:7
Romano 79:19
roof 32:3
room 69:20
ROSA 28:7 33:20,24
    35:6,8,12,15,20
    36:3,7,18,24 98:15
    99:10,16,21 100:14
    101:13 102:24
    104:4
Rosen 3:13 37:24
Rosenman 4:6 9:12
    14:19 19:20 49:19
    49:19
Ross 62:15
roving 41:10
RSR 73:24
Rukavina 4:13
rule 10:7,9 29:6,9
    30:6 50:14,16,24
    58:11 59:12,16 73:4
    73:10 74:12 75:1
    76:2 78:22 84:14,16
    102:19 103:1
ruled 45:13 49:17
rules 15:22 40:15,18
    52:10 101:17,21
rulings 66:13
running 22:23 26:10
    88:10
runs 72:19
rush 95:24

## S

S 3:1 4:1,12
sail 6:1
sale 79:15,21,25
sales 50:20
satisfied 27:21 30:11
    34:1,4 35:5 55:17
    79:19 98:24
satisfy 50:22
Savarese 3:15 6:3,4,8
    6:15,24 8:5,9 37:22
    37:23 39:13 41:19
    42:12,23 43:2 46:1
    46:15 48:4,14,20,24
    62:11 69:20
Savarese's 87:15
saw 86:5
saying 23:24 38:24
    56:17,23 65:17,22
    90:7
says 18:12 33:1 34:16
    36:1 40:1 41:4 44:4
    46:5 59:13 61:18,23
    63:23 64:22 65:12
    71:7,10 75:19 76:11
    79:17 81:8 87:22
    91:7
scheme 7:3 13:22
    22:24 37:4,17 40:25
    51:24,25 52:24
    55:11,12 56:1 60:2
    87:16,17,25 89:3
    93:18,21,23 97:12
    97:17,18,20 102:15
schemer 54:9
Schnabl 3:18 7:4,5,9
    7:12 42:25 62:9,10
    62:22 63:4 67:7
    69:2
Schroeter 3:23
scope 45:7
sea 98:11
search 41:5
second 1:1 6:25 7:1
    27:1 44:12 50:9
    57:22 62:24 72:22

90:22
section 9:24 34:13
    44:17
securities 1:3,9,11,17
    1:19 2:2,4,9,11 3:2
    5:10 10:6,13,18
    12:3 13:5 20:18,24
    26:1 28:8 29:14,18
    30:17,19 35:13
    41:24 43:19 50:15
    51:5,6,11,16 52:5
    71:7,9 77:19 78:9
    78:19 79:21,25
    80:11 90:9 99:6,19
    99:22,25 100:17,18
    100:23,25 103:23
security 73:25 79:16
    100:2,2,5
see 20:25 21:10 23:4
    26:10 31:22 48:16
    69:14 73:5 83:13,13
    95:7
seek 75:5
seeking 37:7 76:9
    90:2
seeks 10:18 35:1 45:2
    72:25 76:1
seen 51:7
sees 90:21
segregate 10:10
    30:24 31:3
segregated 13:14,15
    32:7 90:13,14
segregation 11:12
    32:10
Seidman 67:3,12
sense 6:11,13 19:18
    33:7 34:22 92:14
    96:1
sensible 5:7,10 7:22
    8:2
sent 49:22
sentenced 94:2
separate 49:10 50:4
    71:21 95:4,5
separation 80:8

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

[Page 16]

serious 5:25
serve 28:21 78:20
services 2:25 53:15
 53:17 73:25 82:15
set 12:16 16:1 45:8
 71:12 82:11 89:14
 89:15 105:9
setting 12:18
share 26:23 27:4,12
 27:19 28:4 31:3,4
 34:7 36:12 73:7
 95:1 97:23
shareholders 15:8
 89:19
shares 100:9,10
shoes 25:15 34:2 36:8
 36:13 38:19 39:7,10
 60:22,24
short 50:20
shortfall 21:3
show 84:19 94:10,11
SICAV 4:13,14
side 38:9
sides 104:7
significance 82:17
silo 32:2 100:13
silver 12:5
similar 74:1,18 78:12
 88:2
Similarly 51:3
simple 39:20 79:13
 93:14 98:19
simply 39:22 40:24
 41:14,23 43:6 44:1
 44:13 45:10 62:13
 66:24 67:15 68:9
 76:4 77:9 80:23
single 38:22 64:25
 79:22
SIPA 7:3 8:24 9:5,14
 9:14 10:1,1,4 12:2
 12:23,25 13:1,3,3,6
 13:6,8,12 14:3
 16:20 17:23 18:9,13
 19:14,16 20:12 22:3
 28:18 31:13 32:18

35:1,11 37:18,18
 39:10,16,23,24 40:1
 40:3,20,21,23 41:20
 47:20 49:9 51:3,7
 51:23 55:11 70:17
 70:22 72:13 75:16
 77:1,2,2,23 78:5,15
 87:15,25 88:21
 91:17 92:5,6,11,12
 95:23 102:23 103:2
 103:8
SIPA's 35:24 70:13
 78:17
SIPC 5:12,16,19,24
 20:21 32:21,24 33:4
 33:8,18,20,21,24
 34:2,17 35:2 36:8
 36:13,14,21 37:4,7
 37:8,11,12,18 42:7
 42:13,15 49:20
 54:10,23 55:1,2,3
 55:18,25 56:2,15,19
 57:1,4 58:1,4 61:5
 61:24 63:14,19
 64:14 65:8 68:3,20
 77:23 80:23
SIPC's 25:1,7,9
 34:14,24 37:1,2
 55:13
sit 5:2 61:2
sitting 54:3
situation 22:7 27:8
 49:21 55:7,7 58:8
six 16:9
Skadden 3:17 62:10
 69:18
skip 91:16
SLATE 3:17
slightly 7:6
SLUSA 72:9 79:10
 80:22 81:18
sole 10:1,3 14:5
solely 19:14 44:15
 74:13 81:10,13 84:6
somebody 11:20 58:9
 71:17

someone's 56:11
sorry 12:10 14:12
 17:5 18:6,7 21:22
 21:24 25:4 26:18
 41:12 43:1 57:23
 86:17 88:24 92:16
 94:13 95:11
sort 7:23
sorts 48:6,6
Sotomayor 67:13
 86:12
source 72:21 73:10
 74:21
sources 32:23
Southern 52:20
Southgate 4:11
so-called 34:6 53:17
speak 7:2 24:25 66:9
 70:10 92:6,17 96:22
speaking 6:22 13:4
 48:23 87:6 95:11
special 12:15 101:4
 102:23
specific 25:21 58:21
specifically 20:17
 45:13 49:4 55:13
 68:6
speed 95:13
sphere 67:9
spoke 98:1
Square 3:17
St 16:15,21 17:2 21:8
 21:10,18 22:12
 44:23,25,25 45:3,9
 45:13,24 46:3,10,13
 53:2,3,11 84:18
 95:8,15,17,18 96:8
 96:12,14,14,20,22
 97:5
stage 82:11 87:4
stand 33:25 36:8
 60:23
Standards 74:3
standing 6:19,21
 7:10,20 14:10 16:6
 25:2 38:4,6,16

39:19 40:18 44:14
 44:14,21 45:6,8,19
 46:12 48:9,10 57:20
 59:13,15 60:22
 69:11,24 82:5 84:10
 84:14 85:1,8,11,12
 102:4,7
standpoint 96:1
stands 33:20 34:2
 36:13 38:18 39:7,10
stare 65:25 67:10
 68:14
start 8:21 9:14 58:20
 68:18 85:20,22
 87:13
started 19:6 77:24
starting 9:20 71:24
 84:11 102:11
state 11:3,8,10 46:6
 46:17,21 47:12 65:5
 72:23 73:3,5,6,22
 74:8,11,23 75:8,11
 75:20,21 76:4,4,8,9
 78:25 91:17 102:3,8
 102:12 105:19
stated 84:14
statement 60:11
states 1:1 40:3 105:4
State's 58:11
stating 33:16
statue 87:18
status 28:20
statute 9:5,14,15,15
 9:17 10:4 11:24
 12:2,22 14:18,23
 15:5 16:1,18,19
 18:12 19:8 22:4
 25:6 32:23,24 33:1
 34:16 37:5 39:25
 40:21 41:4,6,21
 42:14,15 48:25 49:2
 49:9,12 50:7 51:3
 51:23 55:24 57:4,12
 58:20 62:2 64:22
 69:6,6 71:6,18,23
 74:6 75:17 76:11

Case: 11-5044   Document: 151-4   Page: 122   05/07/2013   929603   125

PICARD V. HSBC BANK, et.al.                    ORAL ARGUMENT 11/21/12

[Page 17]

77:5 81:6,7,8 87:22
88:19 90:7 92:6
95:23 99:1,4 101:14
103:25
**statutes** 50:12 52:13
52:14
**statutory** 7:3 34:14
52:24 68:22 77:9
99:2 102:15
**stay** 37:9 48:3 96:7
**stayed** 37:8 83:5
**steal** 30:5
**STEEN** 3:10
**stenographically**
105:7
**step** 89:20 92:8
**stepping** 25:14
**stolen** 10:25 13:23
36:2,4 47:8
**stood** 17:10 21:18
**stopped** 61:10
**story** 59:6
**straightforward**
39:20
**stranger** 83:7 85:6
**strangers** 94:4
**street** 2:19 3:3,14
100:5,17
**strictly** 23:16
**strip** 53:7 66:20
**stripped** 66:13
**structure** 70:13,17,20
**subject** 48:2 63:9
65:13,18 66:7 85:13
**subjects** 62:12
**submissions** 66:18
**submit** 9:3 88:13
**subordinated** 49:16
**subordination** 25:10
**subrogated** 57:14,18
59:1
**subrogation** 25:2,8
28:11 32:21,22,25
34:15 37:1,2 54:11
55:14 56:3,7,18
58:16 68:3 69:7

70:19
**subrogee** 33:9 57:1
64:15
**subsequent** 83:24
**subsequently** 84:7
**subsidiary** 44:21
**substantive** 6:9
**substitute** 52:22
**substituted** 30:22
**successor** 28:20 44:8
**sue** 38:17 45:20 64:8
70:12 71:22
**sued** 53:22 82:25
83:8
**suffer** 53:9 96:25
103:12
**suffered** 39:2 47:3
53:5 54:4 69:12,14
96:24,25 97:15,16
**suffering** 97:16
**sufficiently** 56:14
**suggest** 18:3 41:8
65:25 66:23
**suggested** 7:20
**suggesting** 16:22
**suggests** 34:13
**sui** 12:17
**suing** 54:25 59:9,9,11
96:2
**suit** 37:9,10 54:12
**Suite** 3:3
**suits** 51:1
**Sullivan** 4:2 82:1
**superior** 41:17
**supplies** 73:3,9 74:11
76:2
**support** 2:25 43:10
**supported** 9:4
**supports** 21:9
**supposed** 10:10
13:15 25:25 26:21
80:12 90:13
**Supreme** 38:11 43:10
44:18 47:23 49:14
62:17,25 63:2,6,7
64:11,17,22 65:19

66:14 67:24 68:23
69:13,16 73:2,8
79:17 87:9 102:11
**sure** 18:5 50:21 51:14
52:19 96:18 101:11
**surprised** 48:13
**survives** 43:14
**SUSAN** 2:22
**sustained** 27:5
**syllable** 41:4
**S.p.A** 3:19 82:7

---

**T**

**T** 105:1,1
**tag** 83:14
**tainted** 103:16
**take** 20:11 31:25
33:19 35:21 41:13
54:14 83:16 92:7
**taken** 8:10 105:7
**takes** 64:17
**talk** 7:14 38:7 95:15
99:5
**talked** 70:7
**talking** 16:4 19:13,14
39:23 40:11 45:25
47:12 55:8,10 59:3
76:25 91:15 93:10
98:3,5,5,7,8
**task** 7:24 57:4
**taxpayer** 56:15 61:6
**technical** 34:20,21
63:24
**tell** 6:12 45:25 51:15
71:17
**temporal** 33:3
**temptation** 68:22
71:2
**tempted** 68:18
**ten** 5:13,16,20,23
6:24 7:2,6 16:9
49:22
**tendered** 29:18 30:3
30:20,25
**term** 11:24 12:7 15:6
29:10 81:6 96:16

**terms** 19:20 35:3
40:20 59:3
**test** 39:21,21
**Thank** 28:5,6 37:21
48:19 62:6,7 72:1
81:20,21 85:17,19
98:13,13 104:3,4,5
**theory** 7:16 43:18
58:22 68:3 70:7
**they'd** 18:4
**thief** 10:25 44:4,8
**thing** 20:7 45:10 53:3
56:22 67:14 68:2
94:16
**things** 28:11,23 43:3
55:13
**think** 7:22 11:2,18
12:2,25 15:25 16:16
17:3 18:8 19:18,19
20:9 21:7,15 22:11
22:12 24:3,4,4,13
31:9,12,23 39:9
44:21,25 46:1 48:11
49:3 50:10,10 51:8
52:24 53:2 54:16
56:16 57:7 59:16
60:6,13,13 61:25
62:20 74:19 79:14
80:17 84:15 86:18
87:12 89:25 93:12
93:24 95:18 96:20
98:6 99:3 102:16
104:1
**thinking** 98:17
**third** 7:4,6 15:18
38:17,25 39:1 45:20
48:7 70:12 71:16,23
73:18 76:6 83:25
**third-party** 37:3
84:22 91:8,10,15
**THOMAS** 3:11
**thought** 47:10 61:11
83:17
**three** 51:7 54:17,20
59:11,14 64:1,24,25
65:1 66:1,12,19

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

[Page 18]

72:11
**threshold** 44:19
64:18 66:15
**TIA** 75:5
**Timbers** 64:3
**time** 6:7 8:11 10:7
26:10 38:2,22 39:5
47:4 60:5 62:1
63:14 70:24 72:7
86:1 93:11 94:5,6
95:7 97:17,18 98:14
104:10 105:8
**times** 3:17 30:17
93:17
**title** 18:10,11,14,17
18:20 40:4,6,13
51:17 73:15
**toes** 42:24
**told** 64:11
**Tom** 6:25 48:22
**topics** 6:9 28:12
**tornado** 32:3
**tort** 26:22 27:2 76:17
76:22 77:8 79:2
94:9
**tortfeasor** 25:17
**totally** 43:23
**touch** 79:5 93:3
94:13
**Touche** 62:15
**touched** 89:4
**touchstone** 94:20
97:7
**touted** 68:1
**traceable** 84:20
**traditional** 9:16
13:24 17:6 22:13
**trample** 42:24
**transcript** 105:6
**transferred** 10:13
26:7 51:18
**transposition** 102:3
**treat** 14:5,8 31:13
**treated** 87:24 88:2
95:2
**tribunal** 65:24

**tried** 56:4
**true** 51:12 93:9 99:16
105:6
**Trust** 75:3
**trustee** 1:8,16 2:1,8
3:8 6:18,19,21 8:22
8:23,24,25 11:25
13:11,20,25 14:4,8
15:12 16:2,2,3,6,10
16:20,23 18:9,11,13
18:14,23,24,25 19:2
19:9,14 23:12,14
25:18,20 26:20
27:18,21 28:19 35:1
37:6,10,14 38:3,16
38:18,24,24 39:7,10
39:15,19 40:6,18
43:18 44:6,7,16
45:2,8,19 46:8,12
47:13,17 51:7 52:21
54:3 63:15 64:13
65:7,20 71:22 72:6
72:16,18,24 75:14
75:18,25 76:1 80:23
80:24 81:3,10 82:5
83:7 85:6 88:6,8,21
90:2,17,21,21,23,25
91:19 92:9,11,12,13
93:6 95:4 97:9
102:22 103:5,14,19
**trustees** 40:3,20 45:6
**Trusteeship** 26:18
**Trustee's** 15:22
25:12,13 26:19
43:24 45:15 76:13
97:7
**try** 5:6 34:19 49:2
56:18 90:24 95:14
**trying** 21:16,17 70:12
**tune** 36:16 56:11
**turn** 24:21 39:13
53:20 82:20
**turned** 20:14
**turnover** 37:12
**two** 19:17,17 28:10
28:23 32:22 38:13

38:14,18 43:3,8,15
67:11 79:12 92:22
**type** 8:24 25:20 30:18
60:24
**types** 92:7
**typical** 9:23 13:22
18:21,23 19:8 92:8
**typically** 32:18
100:20

**U**

**UBS** 2:7 3:23 7:13
72:4 82:9
**ultimately** 16:3 20:22
26:5 85:24 103:20
**unable** 5:2
**unanswered** 56:19
68:4
**unbroken** 38:10
47:16
**underlying** 72:24
73:11 74:23
**understand** 34:25
53:3 69:2
**understanding** 26:25
66:8
**understood** 9:2 34:24
57:5,10 86:8 87:7
87:11 90:7
**unfortunately** 93:11
**UniCredit** 3:19 4:4
5:22 7:5 8:13 24:10
82:2,7
**UNITED** 1:1
**unreasonable** 52:4
**unremarkable** 46:4
**unsecured** 55:21
**unsuitable** 78:1
**urge** 62:13
**use** 11:24 12:4,7,11
50:15,18 51:20,21
52:17 96:15 99:20
99:24
**uses** 15:5 81:6
**usual** 15:19
**U.S** 2:18

**V**

**v** 92:21 96:10
**vacated** 43:12 62:17
62:25 63:5,8 66:3,4
85:25 86:2
**vacates** 65:1
**vacuum** 10:5
**valid** 24:15 44:5,10
**value** 66:5,13,21
68:16
**vanished** 77:11,13
**various** 5:7 9:6 48:6
48:6 93:17 95:25
96:3 99:20
**vehicle** 78:20
**Velie** 4:4 7:17,18
81:23,25 84:12 93:4
**versus** 8:12 45:12
73:24 96:16
**vice** 69:13
**victim** 43:20
**view** 30:10
**VII** 73:15
**Villehuchet** 4:9
**violate** 54:8
**violations** 74:2 78:22
**virtue** 16:11 17:13
21:2 23:1 25:17
30:8 86:3 97:1,15
**vis-à-vis** 33:12,21
**vs** 1:13,21 2:6,13

**W**

**Wachtell** 3:13 37:23
**Wagoner** 6:19 9:7
39:18 40:19 42:19
45:3,9,18 46:10,17
46:18 47:15 48:10
59:12 60:18 89:4,5
89:22,25 97:25
101:23 102:2,8
104:2
**Wagoner's** 60:16
**wait** 54:12 58:13
**want** 22:4,5 25:11
47:24 49:6,24 57:11

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

63:15 72:11 79:5
85:10,20 87:13,14
92:16 93:3 94:13
**wanted** 8:3 65:8
98:15
**warehouseman** 32:1
32:8,8
**Warshavsky** 3:8 8:14
8:17,18 11:2,9 12:1
12:24 15:25 18:6,15
18:19 20:10 21:15
22:11 23:7,10 24:3
26:12 27:9 28:6
85:19 86:17,20 87:5
90:11 95:10,14
96:20
**Washington** 3:4
**wasn't** 10:4 22:6
67:22 80:5 86:6,7
**way** 5:7 7:22 8:8
14:17 16:1 21:2,3
25:15,16 26:8 31:1
32:13,14 34:15
37:15 50:7 60:1,10
63:12 71:1 73:8
85:10 94:7 98:6
**ways** 50:11 76:18
**wear** 99:15
**Weiss** 43:19
**welcome** 48:20 81:22
**went** 20:13 45:17
68:5 75:7
**weren't** 88:5
**West** 3:14
**we'll** 5:16 8:11 27:17
50:2
**we're** 7:6 8:5,20 16:4
19:13,14 39:22
40:10 47:12 53:22
53:23 71:1 91:15
93:9 97:24 98:3,4,7
98:8,11
**we've** 6:8 24:7 25:22
36:25 66:3 87:11
92:3,3 101:24
**whatsoever** 54:4

**wholly** 44:10 45:5
68:15
**window** 39:22 44:22
**wins** 90:25 91:1
**Winter** 5:1 17:10
**Winter's** 46:19
**wish** 12:4
**won** 77:21,24
**wonder** 67:4
**Worcester** 4:2 82:1
**word** 12:4 64:21
83:15
**words** 21:17 35:7
41:7 43:21,24,24
**work** 6:1 9:25 10:5
**works** 10:21 14:18
50:7
**world** 53:22 69:22
**worthwhile** 63:13
**wouldn't** 18:24 33:7
33:15 37:18 79:1
92:11 101:10
**writes** 65:17
**written** 67:12
**wrong** 48:12 85:4
**wrongdoing** 56:13
103:15,17
**wrongful** 78:13
**wrongfully** 90:15
**wrongly** 80:2
**Wyatt's** 65:15

---

**X**

**x** 1:2,4,8,15,24 2:1,8
2:15
**Xerox** 31:3
**XI00945** 105:19

---

**Y**

**Yeah** 33:24 35:8,15
36:6 61:22
**year** 67:3 76:19
**years** 8:22 40:16
59:25 63:16 98:10
**York** 2:20,20 3:7,7
3:11,11,14,14,18,18

3:22,22 4:3,3,7,7
27:1,10,12,24,25
44:3,9 47:12 58:11
58:15,19 72:20
75:21 76:8,9 89:11
91:20 92:22,24
105:5,19

---

**$**

**$300** 61:25
**$500,000** 36:9
**$9** 59:10,12

---

**0**

**07962-1997** 4:12

---

**1**

**10** 2:17
**10b-5** 78:22
**100** 4:11
**10006** 3:11
**10007** 2:20
**10019** 4:3
**10019-6150** 3:14
**10022-2585** 4:7
**10036** 3:18
**10111** 3:7
**10166-0193** 3:22
**11** 18:11,14 19:8 40:6
40:13 55:1 92:4
**11-5044** 1:6
**11-5051** 1:7
**11-5175** 1:7
**11-5207** 1:6
**12** 53:17 54:25 60:8
**12(b)(6)** 67:17,21
**12:40** 104:10
**1401** 76:12
**15** 5:12,20
**15c3-3** 10:7,9,19
11:11 12:2 13:14
17:22 28:17 29:6
30:6 31:13 50:14
70:10 98:25 102:19
103:1
**15th** 3:3
**1633** 4:3

**17** 44:17 68:7
**17(a)** 64:7,19 65:13
65:22 69:14
**1970** 9:25
**1972** 38:12
**1985** 77:20
**1989** 45:4

---

**2**

**20** 5:12,19 35:9
**200** 3:21
**2000** 59:5 67:3 84:18
**20005** 3:4
**2001** 93:16
**2003** 93:16
**2005** 45:12
**2012** 1:25 2:16
**204** 92:22
**21** 1:25 2:16
**22** 92:21

---

**3**

**3** 65:12 82:5
**3-3** 103:7
**30** 8:22 98:10
**30s** 9:20
**34** 44:17
**35** 63:16
**35-year-old** 63:13
**362** 92:20

---

**4**

**40** 98:10
**41** 92:20
**45** 3:7
**4900** 16:25,25 22:4
96:2

---

**5**

**50** 81:1,1,15,18
**50,000** 100:9,10
**500** 2:19
**500,000** 35:12,14
**5051** 82:10
**51** 3:14 56:25
**5175** 82:2,8
**52nd** 3:14

**PICARD V. HSBC BANK, et.al.**                    **ORAL ARGUMENT 11/21/12**

**5207** 82:9
**575** 4:6

---
**6**

**60** 9:24
**612** 65:12
**68** 65:12

---
**7**

**7** 102:22
**78** 63:20 64:20 70:20
**78fff-2(c)(1)** 87:18
**78fff-2(c)(3)** 14:4
**78fff-3(a)** 25:6 34:12
**78lll** 71:4
**79** 65:4

---
**8**

**800** 3:3 27:21
**805** 3:3